UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JUANA SIERRA

                              Plaintiffs,

- against -

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS AND PATRICIA
LANCASTER, in her capacity as COMMISSIONER
OF NEW YORK CITY DEPARTMENT OF
BUILDINGS, NEW YORK CITY DEPARTMENT
OF HOUSING PRESERVATION AND
DEVELOPMENT, and SHAUN DONOVAN, in his
capacity as COMMISSIONER OF NEW YORK
CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT

                              Defendants.

**AFFIDAVIT**

07 Civ. 6769

----------------------------------------------------------------x

STATE OF NEW YORK   )
                              ) ss:
COUNTY OF NEW YORK  )

        **MARIO FERRIGNO**, being duly sworn, deposes and says:

        1. I am the Assistant Commissioner for Code Enforcement of the City of New York Department of Housing Preservation and Development ("HPD"). In that capacity, I supervise the enforcement of the City's Housing Maintenance Code. I have been employed by HPD for 23 years.

        2. I submit this affidavit, which is based on my personal knowledge and information contained in HPD and court records, in opposition to plaintiff's motion for a preliminary injunction., specifically to summarize the agency's efforts to maintain standards in

housing and its enforcement of New York City Administrative Code §27-2076(b), a provision of the City's Housing Maintenance Code ("the Housing Code").

3. In connection with its general mission to promote quality housing and viable neighborhoods, and to prevent owner abandonment of residential buildings in the City, HPD is authorized to enforce the Housing Code, the New York State Multiple Dwelling Law, and other applicable laws addressed to the maintenance of proper housing standards [New York City Charter § 1802].

4. The Housing Code, which is set forth in Title 27, Chapter 2 of the New York City Administrative Code ("Administrative Code"), is a "comprehensive code of standards for decent housing maintenance," setting forth the minimum standards for water supply, ventilation, heat and hot water, artificial lighting, waste collection, extermination, and other maintenance requirements for dwelling units in the City [Administrative Code § 27-2002].

A. SRO Housing

5. Single room occupancy ("SRO") is a type of housing available in New York City. It typically involves single or double rooms with shared, substandard bathroom and kitchen facilities [Administrative Code § 27-2004(17)]. In the early 1950s, many of the households living in these kinds of units were families with children. As reported in Blackburn, Single Room Living in New York City, dated September 1996, the conditions of overcrowding in substandard units caused City officials to become concerned about the welfare of children living in such units. A copy of the relevant excerpt from the Blackburn report is annexed as Exhibit A. As a result, in 1960, the City enacted Local Law #6. In a legislative memorandum to the Mayor, dated February 2, 1960, a deputy mayor commented, with the approval of the Department of Buildings City Administrator as follows:

> Occupancy of rooming house and single room occupancy accommodations by families with children under the age of 16 years gives rise to many moral and sociological problems. Lack of family privacy, lack of proper kitchen facilities and lack of adequate, private sanitary facilities and [sic][1] up to a most unhealthy environment in which to rear children. Such properties rapidly become slum properties and slums are recognized as prime breeders of juvenile delinquency.

A copy of the available legislative history is annexed as Exhibit B.

6.  Local Law #6 of 1960 prohibited occupancy of rooming house accommodations and rooms used for single room occupancy by children under the age of sixteen. The law took effect in stages. The legislation stated that, "rooming house accommodations. . .and any room or rooms used for single room occupancy. . .where not equipped with a water-closet and a bath or shower and cooking facilities for the exclusive use of the individual tenant, do not constitute decent, safe and healthful living accommodations for children under the age of sixteen years; that the rearing of children of such age in such inadequate and undesirable dwelling accommodations endangers their health, safety and welfare and is detrimental to the welfare of the people of the city. . ." LL 6/1960, § 1.

7.  Local Law #6 was codified as section D26-3.21 of the Administrative Code. In 1967, the City enacted a new Housing Maintenance Code, and section D26-3.21 was recodified with minor changes as Section D26-33.05(b). The current section, now codified as Administrative Code §27-2076(b), states:

> b. No rooming unit shall be occupied by a family with a child under the age of sixteen years, except that if a child is born to a family residing in such accommodations, the unlawful occupancy shall not commence until one year after the birth of such child. In any case where such an unlawful occupancy continues for ten days after the service of a notice of violation upon both the tenant and owner, the department may, in addition to all other remedies,

---

[1] The word "and" should be replaced with "add."

> institute a proceeding for an injunction pursuant to article four of subchapter five of this chapter to obtain an order requiring that such violation be remedied by eviction or removal of the tenant. The provisions of this subdivision shall not prohibit such occupancy (1) in rooming units operated without profit by an educational, religious or charitable institution of the type described and for the purposes set forth in subdivision a of section 27-2077 of this article, or (2) in a summer resort dwelling.

8. HPD enforces Administrative Code §27-2076(b) in New York City. The law is enforced today to protect the health and safety of children. The law advances that objective by prohibiting children under 16 years of age from living in units that are generally occupied by single adults, and do not have the requisite sanitary and kitchen facilities to ensure a healthy environment for young children. Units are small, and meant for occupancy by a single adult or a couple. Occupants in SRO buildings generally share kitchen and bathroom facilities. Moreover, since most SRO housing is occupied by single, transient adults, the law removes children from the risk of inappropriate contact with adults who are not family members when using such facilities in common areas, such as the bathroom. This can be an unsafe situation for a young child.

9. In a Report on Families With Children Living in Single Rooms Occupancy Hotels in San Francison dated May 15, 2001 ("SRO Report"), the effects on child development of living in substandard SRO housing was documented. A copy of the SRO Report is annexed as Exhibit C. Among the developmental problems identified in the report were " . . . Difficulty breathing due to the presence of mold, little or no ventilation, and increased triggers such as pesticides, solvents, chemical fumes, pollution, and dust mites …Decreased development of gross and small motor movement due to small living space … Exposure to more contagion (hap) infections, spread of infection and communicable diseases due to decreased ability to clean restroom and self and high rate of exposure to second-hand smoke, needles and used condoms."

The findings made in the report support the rationale for enactment and enforcement of section 27-2076(b) in New York City. For instance, it is widely known that shelters and other congregate facilities, like SRO housing, remain "endemic sites of tuberculosis." Layton, Tuberculosis Screening among Homeless Persons with AIDS Living in Single-Room-Occupancy Hotels, 1995. A copy of the abstract of this study is annexed as Exhibit D.

10. In the past two years, HPD has issued 28 notices of violation under §27-2026(b).

**B.   The Subject Premises**

11. The premises at issue in this litigation, 24 West 119th Street, Manhattan ("Premises"), is a three-story building with 10 class B SRO units. The Premises has a history of having been poorly maintained, and for ten years was managed by an Administrator appointed by the court under Real Property Actions and Proceedings Law Article 7-A. A number of housing code violations are pending against the Premises, but none concerning occupancy of a SRO unit by a child or children under the age of sixteen in violation of Administrative Code §27-2076(b).

10. I have been advised that on April 24, 2006, the New York City Department of Buildings (DOB) issued violation number 34514435Z against the Premises under Administrative Code §27-217, for occupancy contrary to that allowed by the certificate of occupancy. Upon information and belief, DOB issued this violation because it observed occupancy of an SRO unit by a child or children under the age of sixteen. Though HPD's inspectors did not issue a similar violation, the violation does not appear to have been issued in error.

_____
MARIO FERRIGNO

Sworn to before me this

16th day of August, 2007

_____
NOTARY PUBLIC

JERALD HOROWITZ
Notary Public, State of New York
No. 24-4997097
Qualified in Kings County
Commission Expires June 1, 2010

Index No. 07 CV 6769 (JSR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUANA SIERRA,

         Plaintiff,

-against-

THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF BUILDINGS; PATRICIA J. LANCASTER, in her capacity as COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF BUILDINGS; NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT; SHAUN DONOVAN, in his capacity as COMMISSIONER OF NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT; and EMAD IBRAHEM,

         Defendants.

## AFFIDAVIT

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*Address for Service of Papers*
*100 Church Street, Room 5-189*
*New York, N.Y. 10007*

*Of Counsel: Jerald Horowitz*
*Tel: (212) 442-0589*
*NYCLIS No.2007-023070*