Index No.  07 CV 6769 (JSR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUANA SIERRA,

                                                        Plaintiff,

- against -

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS; PATRICIA J.
LANCASTER, in her capacity as COMMISSIONER OF
THE NEW YORK CITY DEPARTMENT OF
BUILDINGS; NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT;
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT; and EMAD IBRAHEM,

                                                        Defendants.

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR
## PRELIMINARY INJUNCTION

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jerald Horowitz*
*Tel:  (212) 442-0589*
*NYCLIS No. 2007-023070*

GABRIEL TAUSSIG,
ROBIN BINDER,
JERALD HOROWITZ,
                    Of Counsel.
August 20, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .................................................................................................................. 4

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                              <u>Pages</u>

<u>3004 Albany Crescent Tenants' Association v. City of New York</u>,
    1997 U.S. Dist. LEXIS 6138 (S.D.N.Y. May 5, 1997)..................................................5

<u>Anderson Group, LLC v. City of Saratoga Springs</u>,
    2006 U.S. Dist. LEXIS 50073 (N.D.N.Y. 2006) ....................................................5

<u>Beatie v. City of New York</u>,
    123 F.3d 707 (2d Cir. 1997)...........................................................................10

<u>Bery v. City of New York</u>,
    97 F.3d 689, 694 (2d Cir. 1996)......................................................................4

<u>Bryant Westchester Realty Corp. v. Board of Health</u>,
    91 Misc. 2d 56 (Sup. Ct. NY Co. 1977),
    <u>aff'd</u>, 61 A.D.2d 889 (1st Dep't 1978)...............................................................10

<u>City of Cleburne v. Cleburne Living Center</u>,
    473 U.S. 432 (1985)......................................................................................6

<u>Community House, Inc. v. City of Boise</u>,
    2007 U.S. App. LEXIS 13377 (9th Cir. June 8, 2007)....................................6, 7, 9

<u>FCC v. Beach Communications, Inc.</u>,
    508 U.S. 307 (1993).....................................................................................6, 10

<u>Fair Housing in Huntington Committee, Inc. v. Town of Huntington</u>,
    316 F.3d 357 (2d Cir. 2003)P ..........................................................................4

<u>Familystyle of St. Paul, Inc. v. City of St. Paul</u>,
    923 F.2d 91 (8th Cir. 1991) ............................................................................6

<u>Heller v. Doe</u>,
    509 U.S. 312 (1993).......................................................................................6

<u>Hirschmann v. Hassapoyannes</u>,
    11 Misc. 2d 265 (Sup. Ct. NY Co. 2005) ..........................................................5

<u>International Union v. Johnson Controls, Inc.</u>,
    499 U.S. 187 (1991).......................................................................................7

<u>LeBlanc-Sternberg v. Fletcher</u>,

**Cases**                                                                              **Pages**

67 F.3d 412 (2d Cir. 1995)..................................................................................5

Mackey v. Nationwide Insurance Companies,
    724 F.2d 419 (4th Cir. 1984) ..........................................................................5

Orange Lake Associates, Inc. v. Kirkpatrick,
    21 F.3d 1214 (2d Cir. 1994)............................................................................5

Oxford House-C v. City of St. Louis,
    77 F.3d 249 (8th Cir. 1996) ............................................................................6

United States v. Starrett City Associates,
    840 F.2d 1096 (1988) (2d Cir. 1987)..............................................................5

**Statutes**

42 U.S.C. § 3604...............................................................................................5

42 U.S.C. § 3607(b)(1) .....................................................................................7

42 U.S.C. § 11301..............................................................................................9

Act of Nov. 28, 1990, Title VIII, Subtitle C, Part 1, § 825, 104 Stat. 4079, 4356-4357.................9

Administrative Code § 27-2002.....................................................................2, 3

Administrative Code § 27-2004(15) .....................................................................3

Administrative Code § 27-2076(b) ...........................................................*passim*

New York Executive Law § 296...........................................................................5

Rule 65 of the Federal Rules of Civil Procedure ................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JUANA SIERRA,

                              Plaintiff,

        -against-

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS; PATRICIA J.
LANCASTER, in her capacity as COMMISSIONER OF          No. 07 CV 6769 (JSR)
THE NEW YORK CITY DEPARTMENT OF
BUILDINGS; NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT;
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT; and EMAD IBRAHEM,

                              Defendants.

------------------------------------------------------------------------ X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Defendants the City of New York ("the City"), the New York City Department of

Buildings ("DOB"), Patricia J. Lancaster, in her capacity as Commissioner of DOB, the New

York City Department of Housing Preservation and Development ("HPD"), and Shaun Donovan,

in his capacity as Commissioner of HPD, submit this memorandum of law in opposition to

plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure.

The plaintiff in this action is purported to be a tenant living with two children,

ages 5 and 15, in a rooming unit located at 24 West 119th Street in Manhattan ("the premises").

In her complaint, plaintiff makes a facial challenge to Section 27-2076(b) of the City's Housing

Maintenance Code ("the Housing Code"), which restricts children under the age of sixteen from living in a rooming unit operated for profit, as a violation of the Fair Housing Act. A second claim brought under New York City Human Rights Law appears to be brought solely against the defendant landlord, Emad Ibrahem.

As discussed more fully below, and in the accompanying affidavit of Frank Angilletta, sworn on August 14, 2007 ("Angilleta Aff."), and the affidavit of Mario Ferrigno, sworn on August 16, 2007 ("Ferrigno Aff."), and the exhibits attached thereto, Plaintiff's claim of discrimination must fail. Section 27-2076(b) furthers a legitimate interest in safeguarding the health, safety and welfare of children by narrowly excluding them from for-profit operated, substandard dwellings that pose significant health and developmental risks. As a result, plaintiff can not establish likelihood of success on the merits, and her motion for a preliminary injunction must be denied.

## STATEMENT OF FACTS

The City's Housing Maintenance Code, codified as Title 27, Chapter 2 of the New York City Administrative Code ("Administrative Code"), is a "comprehensive code of standards for decent housing maintenance," setting forth the minimum standards for water supply, ventilation, heat and hot water, artificial lighting, waste collection, extermination, and other maintenance requirements for dwelling units in the City "to protect the people of the city against the consequences of urban blight." Administrative Code § 27-2002. The challenged provision of law, Section 27-2076(b), entitled "Prohibited occupancies," states in relevant part:

> No rooming unit shall be occupied by a family with a child under the age of 16 years, except that if a child is born to a family residing in such accommodations, the unlawful occupancy shall not commence until one year after the birth of such child.

- 2 -

Exceptions to the restriction are made for "(1) in rooming units operated without profit by an educational, religious or charitable institution of the type described and for the purposes set forth in subdivision a of 27-2077 of this article, or (2) in a summer resort dwelling." Id. A rooming unit is defined as "one or more living rooms arranged to be occupied as a unit separate from all other living rooms, and which does not have both lawful sanitary facilities and lawful cooking facilities for the exclusive use of the family residing in such unit." Administrative Code § 27-2004(15). Generally, rooming units are located in either rooming houses or tenements.

Initially enacted as Local Law 6 of 1960, the challenged law at bar was enacted based on the following legislative findings:

> It is hereby declared that with the exceptions hereinafter stated, rooming house accommodations, as defined in this title, and any room or rooms used for single room occupancy, as defined in this title, where not equipped with a water-closet and a bath or shower and cooking facilities for the exclusive use of the individual tenant, do not constitute decent, safe and healthful living accommodations for children under the age of sixteen years; that the rearing of children of such age in such inadequate and undesirable dwelling accommodations endangers their health, safety and welfare and is detrimental to the welfare of the people of the city . . .

See Ferrigno Aff., Ex B (New York Legislative Service, Bill Jacket Local Law 6 of 1960).

## A.    The Subject Premises and Notice of Violation

The plaintiff is alleged to occupy two rooming units with her five year old son and fifteen year old daughter. Compl. ¶ 19; Affidavit of plaintiff Juana Sierra, dated July 26, 2007 ("Sierra Aff."), ¶ 3.    The premises is a three-story, 10-unit rooming house.    After receiving an anonymous complaint, DOB inspected the premises on April 24, 2006 and observed a 15-year old girl living in one of the units occupied by the plaintiff. See Angilletta Aff., ¶ 2-5. As a result of the inspection, a notice of violation was issued for violation of 27-2076(b). Id.

- 3 -

Plaintiff alleges that they are subject to eviction proceedings because of this violation. Compl. ¶ 16.

## ARGUMENT

Contrary to plaintiffs' assertion (Pl. Mem. at 5-6), the standard for the grant of a preliminary injunction here, where the relief sought will stay government action taken in the public interest pursuant to statute, the moving party must show irreparable injury and meet "the more rigorous likelihood-of-success standard." Fair Housing in Huntington Committee, Inc. v. Town of Huntington, 316 F.3d 357, 365 (2d Cir. 2003) (distinguishing between prohibitory and mandatory relief) (quoting Bery v. City of New York, 97 F.3d 689, 694 (2d Cir. 1996).

Plaintiff contends that Section 27-2076(b), on its face, violates the Fair Housing Act. Codified as Title VIII of the Civil Rights Act of 1968, the Fair Housing Act ("FHA") addresses discrimination in the sale and rental of housing, providing as follows:

... [I]t shall be unlawful --

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

\*    \*    \*

42 U.S.C. § 3604.[1]  The Fair Housing Act was enacted "to eliminate discriminatory practices of property owners, real estate brokers, builders and home financiers."  Mackey v. Nationwide Insurance Companies, 724 F.2d 419, 423 (4th Cir. 1984), citing Cong. Rec. S. 2272-2284. "Housing practices unlawful under [the Fair Housing Act] include not only those motivated by a racially discriminatory purpose, but also those that disproportionately affect minorities."  Orange Lake Associates, Inc. v. Kirkpatrick, 21 F.3d 1214, 1227 (2d Cir. 1994); United States v. Starrett City Associates, 840 F.2d 1096, 1100 (1988) (2d Cir. 1987).

The Fair Housing Act prohibits discrimination "in the provision of services or facilities" in connection with the sale and rental of a dwelling.  Section 27-2076(b) does not regulate the sale or rental of homes or otherwise provide housing services to plaintiff.  Therefore, it cannot violate the FHA.  The Fair Housing Act does not apply to enforcement of statutory housing standards to maintain "previously acquired housing."  3004 Albany Crescent Tenants' Assn v. City of New York, 1997 U.S. Dist. LEXIS 6138 (S.D.N.Y. May 5, 1997).  But see LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995) (FHA applies to discriminatory zoning practices).

Even if the Fair Housing Act did apply in this context, plaintiff's Fair Housing Act claim would nonetheless fail.[2]  The Second Circuit has not adopted a standard for

---

[1] The Fair Housing Amendments Act of 1988 expanded the scope of the FHA to ban discrimination on the basis of physical handicap and familial status. See Pub. L. 100-430, 102 Stat. 1619 (1988).

[2] Plaintiff's second claim under New York State Human Rights law (New York Executive Law Section 296) fails for the same reasons.  New York follows the same analysis for Human Rights Law claim as a claim brought under the Fair Housing Act.  See Hirschmann v. Hassapoyannes, 11 Misc.2d 265, 272 (Sup. Ct. NY Co. 2005).  Moreover, at least one court has questioned the application of the Human Rights Law to municipalities.  See Anderson Group, LLC v. City of Saratoga Springs, 2006 U.S. Dist. LEXIS 50073 (N.D.N.Y. 2006).

determining the propriety of a statutory occupancy classification under the Fair Housing Act. Without disclosing a split among the circuits on this issue, plaintiff argues (Pl. Mem. at 12) for the standard adopted by the Sixth, Ninth and Tenth Circuits (the "safety-plus" standard). Under the safety-plus standard, a statutory occupancy classification will stand if the defendant can show either: "(1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." Community House, Inc. v. City of Boise, 2007 U.S. App. LEXIS 13377, *17 (9th Cir. June 8, 2007). The other standard, employed by the Eighth Circuit, applies a rationality standard consistent with City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (reviewing City of Cleburne's attempt to restrict the location of group homes for the mentally retarded). See Familystyle of St. Paul, Inc. v. City of St. Paul, 923 F.2d 91, 94-95 (8th Cir. 1991); Oxford House-C v. City of St. Louis, 77 F.3d 249 (8th Cir. 1996). Under that standard, a court need only find some "reasonably conceivable state of facts that could provide a rational basis for the legislative action." Heller v. Doe, 509 U.S. 312, 320 (1993). Thus, if a court can find any "plausible reasons" for the legislation, the court's review is at an end. FCC v. Beach Communications, Inc., 508 U.S. 307, 313-314 (1993). In fact, "a legislative choice is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data." FCC, 508 U.S. at 315

  The appropriate standard to apply here is the rationality standard. First, the rationality standard does not exclude classifications covered by the Fair Housing Act, just as the mentally retarded in City of Cleburne were not excluded. Second, the rationality standard is consistent with the standards for employment discrimination that permit intentional differential treatment where a bona fide occupational qualification is shown to be reasonably necessary to an

- 6 -

employer's operations. <u>See</u> <u>International Union v. Johnson Controls, Inc.</u>, 499 U.S. 187, 200-201 (1991). Moreover, the safety-plus standard swallows up an exception carved out for "a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3607(b)(1). If the exception applied, then no further analysis of the Fair Housing Act would be necessary.

In any event, Section 27-2076(b) meets the higher safety-plus standard. In <u>Community House, Inc.</u>, the Ninth Circuit, in a 2-1 decision, preliminarily enjoined a "men-only" policy at a homeless shelter in City of Boise. The majority in that decision reasoned that the policy was facially discriminatory to women and children, and that the City of Boise provided little support that their "men-only" policy benefits women and families by protecting their safety. There, the City of Boise offered only the affidavit of the shelter's director stating that "mixing disparate populations in the same sleeping facility unnecessarily fosters conflicts." <u>Community House, Inc.</u>, 2007 U.S. App. LEXIS 13377 at *17.

In contrast, the City has established that Section 27-2076(b) furthers a legitimate interest in protecting the health and safety of children by narrowly excluding them from for-profit housing that is detrimental to their health, safety and welfare. Among the legitimate interests served are protecting children's health, and furthering their development and welfare. <u>See</u> Ferrigno Aff., ¶ 8-9, Ex. C, D. Single room living has documented health and safety risks which the City has determined are unfit for children under age of 16. <u>Id.</u> The City of San Francisco reported that children in single room occupancies experience:

> Difficulty breathing due to the presence of mold, little or no ventilation, and increased triggers such as pesticides, solvents, chemical fumes, pollution, and dust mites …Decreased development of gross and small motor movement due to small living space … Exposure to more contagion (hap) infections, spread of infection and communicable diseases due to decreased

- 7 -

ability to clean restroom and self and high rate of exposure to second-hand smoke, needles and used condoms."

Ferrigno Aff., ¶ 9, Ex. C (Report on Families With Children Living in Single Rooms Occupancy Hotels in San Francisco, dated May 15, 2001 ("SRO Report")). There is no alternative to avoid the risks associated with single room living other than removing the children from those unfit living conditions. Moreover, Section 27-2076(b) is narrowly tailored to allow children to live in single room housing operated by charitable, educational, and other non-profit entities, where exposure to such risks are minimized as noted in the legislative history. <u>See</u> Ferrigno Aff., Ex. B.

Even Congress has recognized that some facilities are unfit for habitation by families with children. In legislation entitled "Strategy to eliminate unfit transient facilities," Congress directed, in pertinent part, as follows:

> "(a) In general. The Secretary of Housing and Urban Development shall, not more than 9 months after the date of enactment of the Housing and Community Development Act of 1992 [enacted Oct. 28, 1992], identify the States and units of general local government which use unfit transient facilities as housing for homeless families with children and develop and publish in the Federal Register a strategy to eliminate such use by July 1, 1994. In developing the strategy required under this section, the Secretary shall consult with the Secretary of the Department of Health and Human Services, the Administrator of the Federal Emergency Management Agency, other appropriate Federal officials, appropriate States and units of general local government, major organizations representing homeless persons and other experts.
>
> "(b) Contents of strategy. The strategy developed under this section shall specify--
>
> "(1) actions to be taken to ensure that families with children currently residing in unfit transient facilities will make a timely transition to permanent housing;

- 8 -

"(2) actions to be taken to provide sufficient emergency, transitional, and permanent housing to preclude the future use of unfit transient facilities as housing for homeless families with children; and

"(3) changes in Federal, State, and local statutes and regulations that are needed to eliminate the use of unfit transient facilities as housing for homeless families with children.

\* \* \*

"(d) Definitions. For purposes of this section the term 'unfit transient facility' means a facility that provides transient accommodations to homeless persons and families in an environment that does not meet the minimum standards of habitability established by the Secretary.".

Act of Nov. 28, 1990, P.L. 101-625, Title VIII, Subtitle C, Part 1, § 825, 104 Stat. 4079, 4356-

4357 (legislative history to 42 U.S.C. § 11301).

The legislative history of Section 27-2076(b) was not as plaintiff contends

"simply carried over from the [occupancy number restrictions of] NYC Multiple Dwelling Law"

(Pl Mem. at 11). It was first enacted as Local Law 6 of 1960. <u>See</u> Ferrigno Aff., ¶ 5-8. Then,

and now, it furthers a policy to safeguard children's lives. It also comports with HPD's mission

to preserve and provide affordable housing. <u>See</u> HPD's Mission Statement ("HPD protects the

existing housing stock and expands housing options for New Yorkers as it strives to improve the

availability,    affordability,    and    quality    of    housing    in    New    York    City.")

(http://nyc.gov/html/hpd/html/about/mission.shtml);    Fiscal    Year    2006    Affordability    Study

(http://www.nyc.gov/html/hpd/downloads/pdf/Affordability-Study.pdf);    Mayor    Bloomberg's

Affordable Housing Plan (http://nyc.gov/html/hpd/downloads/pdf/New-Housing-Market-Place-

Plan.pdf).

- 9 -

This Court should not second guess the City's decision that the immediate cost incurred by relocating families did not outweigh the long-time costs on the health and development of our children. See FCC, 508 U.S. at 313; Beatie v. City of New York, 123 F.3d 707, 711 (2d Cir. 1997) (summary judgment granted to City on challenge by cigar smoker to the City's law banning smoking in public areas on equal protection and due process grounds). As the dissent in Community House, Inc. noted, "[w]e should not be so shortsighted as to not recognize that improving the housing for certain groups of people may require some short-term disadvantages." Community House, Inc., 2007 U.S. App. LEXIS 13377 at *53. Common sense provides ample justification that by excluding children from unsafe, unsanitary conditions created by dwellings with substandard bathroom and kitchen facilities, children's health and development will be advanced. See Bryant Westchester Realty Corp. v. Board of Health, 91 Misc. 2d 56, 58 (Sup. Ct. NY Co. 1977), aff'd, 61 A.D.2d 889 (1st Dep't 1978) ("[E]ven without the need for a study, it must be concluded that adequately installed window guards will tend to prevent children from falling out of windows.").

Accordingly, plaintiff has not established a likelihood of success on the merits, and her application for a preliminary injunction should be denied.

## CONCLUSION

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED.**

Dated:      New York, New York
            August 20, 2007

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the City of New York
                          Attorney for Municipal Defendants
                          100 Church Street, Room 5-189
                          New York, New York 10007
                          (212) 442-0589

                          By: _____
                              Jerald Horowitz (JH8395)
                              Assistant Corporation Counsel
                              Administrative Law Division

GABRIEL TAUSSIG,
ROBIN BINDER,
JERALD HOROWITZ,
            Of Counsel.