UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

JUANA SIERRA,

                      *Plaintiff,*

              - against -

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER, in her capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF BUILDINGS; NEW
YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, and
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT; and EMAD IBRAHEM.

                      *Defendants.*

------------------------------------------------------------------ X

07 Civ.  6769   (JSR) (ECF Case)

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

THE URBAN JUSTICE CENTER
Homelessness Outreach and
Prevention Project
Leslie T. Annexstein (LA 0430)
Ami T. Sanghvi (AS 5128)
123 William Street, 16th Floor
New York, New York 10038
Tel. (646) 602-5643

WEST SIDE SRO LAW PROJECT
Goddard Riverside Comm. Center
Molly Doherty (MD 2044)
Martha Weithman (MW 3333)
647 Columbus Avenue
New York, New York 10025
Tel. (212) 799-9638

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT.............................................................................................................1

      I.     HMC Section 27-2076(b) is subject to the Fair Housing Act's
           nondiscrimination provisions and must be analyzed under a more
           searching inquiry not a rationality standard....................................1

      II.    HMC Section 27-2076(b) is facially discriminatory and not
           necessary to protect the health, safety, and welfare of children ......4

      III.   The Anti-Injunction Act does not apply. ........................................9


CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*3004 Albany Crescent Tenants' Assn. v. City of New York*, 1997 U.S. Dist.
LEXIS 6138 (S.D.N.Y. May 5, 1997) ...............................................................................2

*Alliance for the Mentally Ill v. City of Naperville*, 923 F. Supp. 1057 (N.D. Ill. 1996)......2

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) ...............................................................1

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984) .....7

*Children's Alliance v. City of Bellvue*, 950 F. Supp. 1491 (W.D. Wash. 1997)..................3

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) ......................................2

*City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995)..............................................4

*Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007)............................ *passim*

*Cmty. House Trust v. Dep't of Consumer & Reg. Affairs*,
257 F. Supp. 2d 208 (D.D.C. 2003).................................................................................2

*Huntington Branch NAACP v. Town of Huntington*, 844 F. 2d 926 (2d Cir. 1988)
*aff'd* 488 U.S. 15 (1988) ................................................................................................5

*International Union, United Auto. Workers v. Johnson Controls, Inc.*,
499 U.S. 187 (1991)........................................................................................................9

*Meyer v. Holley*, 537 U.S. 280 (2003) .................................................................................7

*Oxford House-Evergreen v. City of Plainfield*, 769 F. Supp. 1329 (D.N.J. 1991) ..............9

*Oxford House, Inc. v. City of Albany*, 819 F. Supp. 1168 (N.D.N.Y. 1993) .......................9

*Palmieri v. Town of Bablyon*, 2006 WL 115162 (E.D.N.Y. 2006) ......................................4

*U.S. v. City of Chicago Heights*, 161 F. Supp. 2d 819 (N.D. Ill. 2001)...............................2

*United States v. Grishman*, 818 F. Supp. 21 (D. Me. 1993)................................................5

*Valdez v. Brookhaven*, 2005 U.S. Dist. LEXIS 36713 (E.D.N.Y. 2005).............................1

## **Statutory References**

42 U.S.C. § 3601 *et seq.* (2000) ............................................................... *passim*

42 U.S.C. § 3607(b)(1) .............................................................................4
28 U.S.C. § 2283 ......................................................................................9

## **Regulatory References**

N.Y.C. Admin. Code § 27-2011 ................................................................7

N.Y.C. Admin. Code §  27-2018 ...............................................................7

N.Y.C. Admin. Code § 27-2057-2062........................................................7

N.Y.C. Admin. Code § 27-2076(b)...................................................... *passim*

N.Y. Exec. Law § 296(6) (McKinney 2007) ..............................................4

N.Y. Mult. Dwell. Law § 31(6)  (McKinney 2007).....................................7

## PRELIMINARY STATEMENT

Plaintiff Juana Sierra respectfully submits this Reply Memorandum of Law in response to both City Defendants' and Defendant Ibrahem's opposition papers to the motion for a preliminary injunction. As discussed in Plaintiff's Memorandum of Law in Support of the Order to Show Cause ("Pl.'s MOL"), Plaintiff meets the standard for preliminary injunctive relief.

## ARGUMENT

**I.     HMC Section 27-2076(b) is subject to the Fair Housing Act's nondiscrimination provisions and must be analyzed under a more searching inquiry not a rationality standard.**

First, City Defendants incorrectly narrow the scope of the Fair Housing Act by characterizing the prohibition on discrimination to only the provision of services or facilities in connection with the sale and rental of a dwelling. *See* Defs.' Mem. of Law in Opposition to Motion for Preliminary Injunction (August 20, 2007) at 5 ("City Defs. MOL"). In fact, the Fair Housing Act's scope is much broader and makes it unlawful to make unavailable or deny a dwelling to any person because of familial status. 42 U.S.C. § 3601 *et seq.* (2000). In this instance, the HMC makes unavailable a dwelling to Plaintiff Sierra and her children on the basis of familial status. According to Defendants' analysis, only statutes specifically stating that a dwelling cannot be sold or rented to certain persons would violate the Fair Housing Act. As courts have noted, the provisions of the Fair Housing Act are to be interpreted broadly in accordance with Congress' intent of prohibiting discrimination and allowing for integrated living. *Valdez v. Brookhaven*, 2005 U.S. Dist. LEXIS 36713 (E.D.N.Y. 2005) citing *Cabrera v. Jakabovitz*, 24 F.3d 372, 388 (2d Cir. 1994) (internal quotations omitted). Hence the Fair Housing Act applies where the effect of a discriminatory provision would result in making a

dwelling unavailable on the basis of familial status, as is the case with the New York City

("NYC") Housing Maintenance Code ("HMC") § 27-2076(b).

Further, City Defendants erroneously argue that the Fair Housing Act does not apply to

enforcement of statutory housing standards to maintain previously acquired housing. *3004

Albany Crescent Tenants' Assn. v. City of New York*, 1997 U.S. Dist. LEXIS 6138 (S.D.N.Y.

May 5, 1997).[1]  In stark contrast, Plaintiff Sierra is not requesting the enforcement of statutory

housing standards to *maintain* previously acquired housing but rather is seeking to invalidate a

housing provision where the enforcement affirmatively and unlawfully *makes unavailable*

previously acquired housing in violation of the Fair Housing Act.

Second, City Defendants inappropriately argue for the application of a standard of review

developed by the Supreme Court in *City of Cleburne v. Cleburne Living Center*.  473 U.S. 432

(1985).  However, *City of Cleburne* involved a challenge under the equal protection clause of the

Constitution on behalf of the mentally disabled.  In that case, the Court found that the

classification of mental retardation was subject to a lesser standard of review and therefore need

only be rationally related to a legitimate state interest.  *Id.*[2]

In the instant case, Plaintiff Sierra has not raised a constitutional claim.  Rather, Plaintiff

Sierra claims that the HMC provision violates a specific antidiscrimination statute, the Fair

Housing Act, by discriminating on the basis of a specifically protected status - familial status.

---

[1] In *3004 Albany Crescent Tenants'*, plaintiffs unsuccessfully argued that the NYC Department of Housing Preservation and Development neglected its obligations to address housing violations in minority residences while continuing to perform its duties for non-minority tenants in violation of the Fair Housing Act.

[2] Defendant Ibrahem relies on state court cases to support the contention that NYS statutes should be afforded presumptive validity but does not address the fact that Plaintiff Sierra is not raising a constitutional challenge but rather is challenging discrimination of a protected class of persons under a federal statute.  *See* Declaration of Seth Denenberg dated September 5, 2007 ("Denenberg Decl.") ¶ 36.

2

Under the Act, "families with children must be provided the same protections as other classes of persons." *See* HUD Preamble II, 24 C.F.R. Ch. 1., subch. A, app. I, 54 Fed. Reg. 3236 (Jan. 23, 1989). The Fair Housing Act sets out protected classes and provides those limited instances in which the prohibition against discrimination does not apply to those protected classes.[3]

City Defendants also argue for this Court to apply a rational basis review when interpreting whether the justifications for a facially discriminatory law are legitimate and inappropriately rely on two Eighth Circuit cases involving persons with disabilities without providing any cases where rational basis review was relevant for a claim of discrimination on the basis of familial status. *See* Defs.' MOL at 6. The more appropriate standard is the more searching inquiry applied by the Sixth, Ninth, and Tenth Circuits.' *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007) (finding the more searching inquiry to be more in line with the Supreme Court's analysis in *International Union, United Auto. Workers v. Johnson Controls, Inc.*, 499 U.S. 187 (1991)). The Ninth Circuit notes that the "Eighth Circuit's approach is inappropriate for Fair Housing Act claims because some classes of persons specifically protected by the Fair Housing Act, such as families and the handicapped, are not protected classes for constitutional purposes." *Cmty. House, Inc. v. City of Boise*, 490 F. 3d at 1050 (citing cases from a majority of the district courts following the Sixth and Tenth Circuits' framework, *see e.g.*, *Cmty. House Trust v. Dep't of Consumer & Reg. Affairs*, 257 F. Supp. 2d 208, 228-29 (D.D.C. 2003); *U.S. v. City of Chicago Heights*, 161 F. Supp. 2d 819, 843 (N.D. Ill. 2001); *Children's Alliance v. City of Bellvue*, 950 F. Supp. 1491, 1497-98 (W.D. Wash. 1997); *Alliance for the Mentally Ill v. City of Naperville*, 923 F. Supp. 1057, 1074-75 (N.D. Ill. 1996)).

---

[3] Further, even if a constitutional standard of review were appropriate, familial status has not yet been subject to constitutional analysis by the Supreme Court, and thus the relevant standard of scrutiny is unclear.

Hence, a restrictive housing code provision justified on the basis of health and welfare of

children but with the effect of barring a protected class of people from residing in certain

dwellings requires a searching inquiry into its legitimacy.

Finally, as explained more fully in Plaintiff's Memorandum of Law, regardless of the

standard of review, the City is not exempt from the Fair Housing Act's prohibitions against

discrimination pursuant to 42 U.S.C. § 3607(b)(1).  *See* Pl.'s Mem. of Law in Support of Pl.'s

Order to Show Cause for T.R.O. and Prel. Inj. ("Pl.'s MOL") at 14-15; *see contra* City Defs.'

MOL at 7.  The HMC provision is a restriction on families with children living in certain

dwellings rather than a total occupancy limit and hence the City must comply with the Fair

Housing Act.  *See* Pl.'s MOL at 14 citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725,

728 (1995).

## II.    HMC Section 27-2076(b) is facially discriminatory and not necessary to protect the health, safety and welfare of children.

City Defendants' and Defendant Ibrahem's assertion that HMC § 27-2076(b) does not

violate the Fair Housing Act or New York State Human Rights Law because the legitimate

interest behind such law is that it protects the health, safety and welfare of children is wholly

misplaced.[4]  Defendants fail to cite relevant law or provide specific evidence to support this

broad contention and justify the discriminatory provision.  Defendants ignore that other

---

[4] While Defendant Ibrahem asserts that the City of New York has a legitimate state interest to protect the safety, health and welfare of children in enacting and enforcing HMC § 27-2076(b), the case he cites to support such assertion, *Palmieri v. Town of Bablyon*, is wholly irrelevant. *See* Denenberg Decl. ¶30 citing 2006 WL 1155162 (E.D.N.Y. 2006). *Palmieri* is a case where building owners challenged a local law requiring building owners to obtain a rental permit in buildings even where rent isn't being paid in part on the ground that it violated the Fair Housing Act. *See Palmieri*, 2006 WL 115162. Defendant Ibrahem fails to explain how *Palmieri* supports its assertion. Defendant also incorrectly relies on *Cmty. House, Inc.* to support this assertion. *See* Denenberg Decl ¶ 31. In *Cmty. House Inc.* the court held that the City of Boise failed to demonstrate a legitimate state interest to support the development of a men-only homeless shelter because no clear indication of safety concerns for women and children were presented.

provisions exist under the HMC that protect the health, safety and welfare of children. Defendants also ignore New York State Law and guidance from the Department of Housing and Urban Development ("HUD") which sets out standards that protect the health, safety and welfare of children without violating the Fair Housing Act.

First, courts have held that the Fair Housing Act does not permit landlords to impose restrictions on children because of purported safety concerns. *See, e.g., United States v. Grishman*, 818 F. Supp. 21, 23 (D. Me. 1993) (granting partial summary judgment after rejecting safety defense because "[n]othing in the statute permits the owner to determine that risks and circumstances of his dwelling and the neighborhood make it inappropriate for children. That decision is for the tenant."). Additionally, in the context of determining whether a proffered justification is valid for acts with discriminatory effects, courts have also rejected municipalities' justifications for policies and practices which have a discriminatory effect on a protected class, especially when an alternative course of action exists to serve that interest with a less discriminatory effect. *See Huntington Branch NAACP v. Town of Huntington*, 844 F. 2d 926, 939 (2d Cir. 1988) *aff'd* 488 U.S. 15 (1988).

Second, similar to the City of Boise in *Cmty. House, Inc. v. City of Boise*, City Defendants here fail to cite to a single incident of harm inflicted on a child between the age of 1 and 16 years as a result of living in an SRO in New York City to support its assertion that it is dangerous for children to live in SROs. *See Cmty. House Inc.*, 490 F.3d, at 1051 (finding that "other than Roscoe's opinion, the City did not submit a single police report, incident report, or any other documentation that supported any safety concerns.") Rather, as in *City of Boise*, City Defendants solely rely on documents that make general statements about SROs not being housing intended or conducive to families. *See id*.

5

For example, City Defendants rely on a report produced by the City of San Francisco, "Report on Families With Children Living in Single Room Occupancy Hotels in San Francisco." *See* Aff. of Mario Ferrigno dated August 16, 2007 ("Ferrigno Aff."), Ex. C. The San Francisco report states that San Francisco's Department of Public Health definition of homeless includes anyone living in an SRO. *See id.*, at 11. The report contains statistical information and concrete data about the impact of homelessness on children. *See id.* Yet the report fails to draw a distinction between the harms suffered by "homeless" children without shelter or a home as opposed to the harms suffered by "homeless" children living in SROs. Therefore, not only do City Defendants rely on general statements about the harms of living in SROs, but they also rely on data which blurs an important distinction when trying to evaluate the effects that living in SROs in NYC has on children. Furthermore, Plaintiff's counsel has searched extensively and found no law in San Francisco that prohibits children from living in SROs, and notes that City Defendants have not provided any such citation.

Similarly, City Defendants' reliance on the study, "Tuberculosis Screening among Homeless Persons with AIDS Living in Single-Room-Occupancy Hotels," is unpersuasive. *See* Ferrigno Aff., Ex. D. This study, published in November 1995, investigated the extent of tuberculosis in commercial single-room-occupancy hotels where the NYC Division of AIDS Services provides housing support to homeless persons with AIDS in October of 1992. *Id.* The study refers to a completely different set of facts and type of housing than is involved in the instant case and hence is unpersuasive.[5]

---

[5] City Defendants also rely on a report on Single Room Living in New York City. *See* Defs.' MOL at Ex. A. The study only acknowledges that approximately 5% of SRO households included at least one child but makes no specific findings regarding the specific harm that SROs have on children. *See id.* at 49.

Third, the HMC sets forth mandatory standards for housing conditions to address poor conditions in SROs impacting the health, safety and welfare of children. This includes, but is not limited to, providing adequate heat, hot water, and buildings free of leaks, among other physical conditions of buildings. Indeed, provisions of the HMC exist to address problems raised by City Defendants such as mold, little or no ventilation, and unclear bathrooms. *See* Ferrigno Aff. ¶ 9; *see e.g.* HMC § 27-2057-2062 (standards for lighting and ventilation of living units), HMC § 27-2011 (owner of a building must keep shared interior spaces clean); HMC § 27-2018 (rodent and insect infestation and requirement to abate it). Furthermore, New York State and City fire codes, health codes, and child welfare regulations may also be utilized to protect the health, safety and welfare of tenants, including children.

Additionally, occupancy standards regulate the health, safety and welfare of tenants, including children. New York State's Multiple Dwelling Law § 31(6) (MDL) sets forth occupancy standards for SROs to address overcrowding. Thus, where more than two adults, or more than one adult and two children, reside in an SRO, MDL § 31(6) may be invoked to prohibit overcrowding. City Defendants raise overcrowding as a major concern for children, yet conveniently ignore the State law which adequately addresses the concern. *See* Ferrigno Aff. ¶5. Furthermore, as discussed in Plaintiff's MOL, HUD has issued policy guidance regarding the evaluation of occupancy standards under the Fair Housing Act. *See* Pl.'s MOL at 13. Because HUD is "the agency primarily charged with the implementation and administration of the statute [FHA]," courts must "ordinarily defer to an administering agency's [HUD's] reasonable interpretation of a statute." *See Meyer v. Holley*, 537 U.S. 280, 288-89 (2003); *see generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842-45 (1984).

Fourth, City Defendants rely on the legislative history and intent of Local Law 6, passed in 1960, which was amended and became HMC § 27-2076(b) in 1967, to support its safety rationale while conveniently ignoring subsequent federal law. *See* Defs.' MOL at 9-10; *see also* Ferrigno Aff. ¶¶ 6-7. The Fair Housing Act Amendment that prohibited discrimination on the basis of familial status was enacted in 1988. City Defendants can not ignore the protections afforded families with children which have been in place since 1988. Nowhere in its recitation of the legislative history does City Defendant claim that a review was conducted after this amendment was passed to ensure that HMC § 27-2076(b) was in compliance with the Fair Housing Act. Indeed, had such a review been conducted, the City might have made its own determination that HMC § 27-2076(b) was no longer valid and that other regulations, such as the NYS Multiple Dwelling Law, adequately protect the health, safety and welfare of children in SROs. City Defendants also argue that SROs are substandard and create health and safety risks for children.[6] Yet, City Defendants fail to cite to any specific data documenting the harm to children who live in SROs.[7] Similarly, City Defendants claims to have issued 28 violations of HMC § 27-2076(b), yet, fail to allege any specific facts to support its assertion that living in SROs causes harm to children. *See* Ferrigno Aff. ¶ 10.

Unfortunately, in NYC, where there is a dearth of affordable housing, many families are forced to choose between less than ideal housing options or homelessness. *See* Affidavit of

---

[6] City Defendants repeatedly distinguishes between for-profit SROs, which may prohibit children between the ages of 1 and 16 from living in them, and not-for-profit SROs for which HMC § 27-2076(b) does not apply. Such distinction clearly undermines the contention that SROs are inherently dangerous for children to live in, if such risk of danger seems to only arise in the context of for-profit SROs under City Defendants' assertions.

[7] In fact, the legislative intent and history of HMC § 27-2076(b) indicates that the concern about the health, safety and welfare of children is invoked where children must share bathrooms with other tenants in the building. The undisputed facts of the instant case are that Plaintiff Sierra is the only tenant residing on the first floor of the subject building and that no other tenants use the bathroom on the first floor of the subject building.

Juana Sierra dated July 25, 2007 ("Sierra Aff.") ¶ 13. City Defendants ignore this and focus

solely on the harms children could suffer when living in SROs. City Defendants do not address

the multitude of developmental, educational, and health related problems homeless children and

families face. *See e.g.*, The Crisis in Homelessness: Effects on Children and Families, Hearing

Before the Select Committee on Children, Youth, and Families, House of Representatives, 100th

Congress (February 24, 1987) *available at*

http://eric.ed.gov/ERICDocs/data/ericdocs2sql/content_storage_01/0000019b/80/1b/e3/1e.pdf;

Coalition for the Homeless Fact Sheet, the Affordable Housing Crisis and Homelessness in New

York City (September 2002) available at

http://www.coalitionforthehomeless.org:8080/top/CFTH/downloads/nychousing01.pdf.

City Defendants ignore the realities of the current NYC housing market, rely on

legislative history pre-dating the prohibition of discrimination on the basis of familial status, and

fail to cite any specific studies or examples where the harm it seeks to protect against is actually

occurring. Thus, Defendants have not presented sufficient evidence that the facially

discriminatory HMC provision is necessary to protect the health, safety, and welfare of children.

**III.    The Anti-Injunction Act does not apply**

Defendant Ibrahem argues that 28 U.S.C. § 2283 ("Anti-Injunction Act") bars a restraint

or injunction against the continued prosecution of existing proceedings. The Anti-Injunction Act

is not applicable in this situation and hence there is no need to distract this Court with the various

exemptions to the statute. Indeed, Courts have held that claims brought under the Fair Housing

Act do not invoke the Anti-Injunction Act. *See Oxford House, Inc. v. City of Albany*, 819 F.

Supp. 1168 (N.D.N.Y. 1993) *citing Oxford House-Evergreen v. City of Plainfield,* 769 F. Supp.

1329, 1341 (D.N.J. 1991).

Plaintiff Sierra is challenging a provision of the HMC which facially discriminates on the basis of familial status and is primarily requesting an injunction that prevents enforcement of HMC 27-2076(b). If awarded such an injunction, Defendant Ibrahem will not be able to proceed on the eviction claim based on HMC § 27-2076(b). Furthermore, Federal Court, not housing court, is the more appropriate court for raising a challenge to a City ordinance under a federal antidiscrimination statute. The Anti-Injunction Act seeks to protect the integrity of lower state court proceedings but not to curtail the ability of prospective plaintiffs from asserting claims of discrimination. Therefore, this action is not barred by the Anti-Injunction Act.

## CONCLUSION

For the reasons set forth above and for the reasons set forth in Plaintiff's MOL, Plaintiff Sierra meets the standard for a preliminary injunctive relief and respectfully requests that this Court issue a preliminary injunction enjoining Defendants from enforcing or acting on the basis of the challenged HMC provision.

Dated: September 12, 2007
       New York, NY


                                        Respectfully Submitted,


                                        BY: AMI T. SANGHVI