UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JUANA SIERRA,                           07 Civ. 6769  ( JSR )

                     *Plaintiff,*

            - against -                          **AFFIDAVIT IN OPPOSITION**

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER, in her capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF BUILDINGS; NEW
YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, and
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT; and EMAD IBRAHEM.

                     *Defendants.*
------------------------------------------------------------------X

STATE OF NEW YORK  )
                    SS.:
COUNTY OF NEW YORK  )

       JUANA SIERRA, being duly sworn, deposes and states:

       1.      I am the Plaintiff in the within proceeding.

       2.      I make this affidavit in opposition to the City defendants' motion to dismiss my complaint based on lack of standing because I moved out of the SRO rooms at 24 West 119th Street.

       3.      After a very difficult period of extreme pressure from my landlord, Mr. Emad Ibrahem, and living without heat and hot water for several months, I agreed to surrender my rights to the two SRO units at 24 West 119th Street where I had been living with my two children, now aged 6 and 15, since December 2001.

4. I finally agreed to accept Mr. Ibrahem's offer of $19,000.00 to move out of the building because I did not feel as though I had any other choice. I feared that if I did not accept his offer I would be evicted because I was living there with my children and then left with nothing.

5. Mr. Ibrahem always made it clear to me that he would do whatever he could to evict me and my children. It finally became too difficult to continue living there and I felt that I had no other choice but to leave.

6. Mr. Ibrahem made living in the building extremely difficult and uncomfortable. Before we moved out, we had been living without hot water since September 2007. Despite repeated complaints made to Mr. Ibrahem and the New York City Department of Housing Preservation and Development (HPD) about the lack of hot water, Mr. Ibrahem refused to provide us with hot water. In fact, HPD was very involved and representatives from HPD spoke with Mr. Ibrahem on numerous occasions about the problem with the lack of hot water and, when HPD would visit the building, Mr. Ibrahem would turn the hot water on and then once HPD left, he would turn it off again. In addition, we were without heat on multiple occasions before we moved out.

7. There were also repairs that needed to be made on numerous occasions, which Mr. Ibrahem refused to make. For example, he refused to fix the bathtub, which was blocked for several months making it difficult to bathe. The landlord also refused to fix the lock on the front door to the building, which was broken for a few weeks in early October 2007 making the building very unsafe.

8. The landlord also applied a lot of pressure on me and my family to move out of the building. He continuously came to my home to ask me when I was going to

move out. He would also tell me that I was going to be evicted because I was living there with my children.

9. It is very important to me to provide a safe and stable home for my children. I believe that it was no longer safe to continue living in the building with my children because Mr. Ibrahem made the living conditions in the building unsafe by refusing to provide us with hot water for several months and heat on multiple occasions. I did not want to continue living in the building where I feared that my children would not have heat and hot water during the cold winter months.

10. Had Mr. Ibrahem provided me and my children with heat and hot water, as he was required to do, and not applied so much pressure on me to leave, I would have continued to live in the building with my children. My children and I have been living in the community for over the past 6 years and we built a life there. We have friends and family that live in the neighborhood and we are a part of the community. It was also an affordable place to live because I have a low income and my rent for two rooms was $522.15, which is affordable for me.

11. When I signed the agreement stating that I surrendered my two SRO rooms and that I accepted $19,000.00, I did not know that there were other terms to the agreement. I do not read or speak English, so I did not know what the rest of the agreement said. I did not have any legal advice before signing the agreement and no one translated it into Spanish for me. I did not know that I was signing an agreement that said anything other than I was surrendering the SRO rooms for $19,000.00 until my attorney told me what the agreement said after I signed it. I never told Mr. Ibrahem that I was going to discontinue this case against him or the City. Having spoken with my attorney, I

3

agreed to discontinue this case against Mr. Ibrahem, but I would like to continue the case against the City defendants. I believe that the NYC HMC provision prohibiting children between the ages of 1 and 16 from living in SROs is discriminatory based on familial status and I fear that I could find myself facing eviction again if I move into another SRO building.

12. I am temporarily staying with my older son and his family in his two room apartment in the Bronx. It is very difficult to live in the Bronx because both of my children go to school in Manhattan in the neighborhood where we used to live. Having to permanently move to another borough or even another neighborhood could have a negative impact on my children's educational well-being and would be incredibly disruptive to their lives.

13. In addition, we would like to return to our neighborhood because we have friends and family in the community who provide support for us as a family. My family also receives medical treatment in a hospital in our neighborhood and we also go to church regularly in our community, where we have gone since we moved into the neighborhood. Finding a comfortable place to worship in one's community is very important to my family.

14. I am currently looking for another home because I want to have my own home in Manhattan in the community where I used to live and closer to where my children go to school. I am looking at both apartments and SROs and, while I would prefer to live in an apartment, I do not believe that I will ever be able to find an apartment that I can afford to rent.

4

15. I believe that I will find an SRO that I can afford based on my income. However, I am fearful that owners of SRO buildings will not rent to me because I have children or, if they do rent to me, that I will risk being evicted again because of the NYC HMC provision prohibiting children between the ages of 1 and 16 from living in SROs. I do not want to find myself in the same situation that I was before of being threatened with eviction because I have children living in an SRO.

16. This would create significant hardship for me because I believe that SRO housing is the only housing that I could possibly afford. I would not be able to find an apartment in the community where we live, and have lived for over the past 6 years, for the same affordable rent that I was paying. I have seen a very small studio apartment for $900.00 per month, which is more than I can afford and almost double what I was paying.

17. I hope the Court allows me to continue with my claim against the City defendants challenging the discriminatory provision of the NYC HMC so that I will not risk eviction again if, and possibly when, I live in another SRO building with my children who are between the ages of 1 and 16 because there are so few affordable housing options available to us and I do not know where we would live.

WHEREFORE, I respectfully request that the relief sought herein be granted.

JUANA SIERRA

Sworn to before me this
20th day of December, 2007

Notary Public

MARTHA ANN WEITHMAN
Notary Public, State of New York
No. 02WE6068495
Qualified in New York County
Commission Expires March 22, 2010

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JUANA SIERRA,

                       *Plaintiff,*

                - against -

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER, in her capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF BUILDINGS; NEW
YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, and
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT; and EMAD IBRAHEM.

                       *Defendants.*
------------------------------------------------------------------X

07 Civ. 6769 (JSR)

**AFFIDAVIT OF TRANSLATION**

STATE OF NEW YORK )
                    SS.:
COUNTY OF NEW YORK )

      YARROW WILLMAN-COLE, being duly sworn, deposes and says:

      1.    I am not a party to the action, I am over 18 years of age and am employed as an organizer by the West Side SRO Law Project.

      2.    I am employed at the West Side SRO Law Project located at Goddard Riverside Community Center, 647 Columbus Avenue, New York, New York 10025.

      3.    I am fluent in both English and Spanish.

4. I translated the within AFFIDAVIT from English to Spanish and she informed me that she understood its contents, and that the contents are true and accurate.

                                                          Yarrow Willman-Cole

Sworn to before me this
20th day of December, 2007

Notary Public

MARTHA ANN WEITHMAN
Notary Public, State of New York
No. 02WE6068495
Qualified in New York County
Commission Expires March 22, 2010