```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JUANA SIERRA,                            :
                                         :
             Plaintiff,                  :
                                         :
       -v-                               :      07 Civ. 6769 (JSR)
                                         :
CITY OF NEW YORK; NEW YORK CITY          :      MEMORANDUM ORDER
DEPARTMENT OF BUILDINGS, and PATRICIA    :
J. LANCASTER, in her capacity as         :
COMMISSIONER OF NEW YORK CITY            :
DEPARTMENT OF BUILDINGS; NEW YORK        :
CITY DEPARTMENT OF HOUSING               :
PRESERVATION AND DEVELOPMENT, and        :
SHAUN DONOVAN, in his capacity as        :
COMMISSIONER OF NEW YORK CITY            :
DEPARTMENT OF HOUSING AND                :
DEVELOPMENT; and EMAD IBRAHEM,           :
                                         :
             Defendants.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Juana Sierra challenges section 27-2076(b) of the New York City Housing Maintenance Code ("HMC"), which prohibits children from living in single room occupancy units ("SROs"), on the ground that the section discriminates on the basis of familial status in violation of the federal Fair Housing Act, 42 U.S.C. § 3604(a) ("FHA"). At the time Sierra filed her complaint, she and her two young children occupied an SRO at 24 West 119th Street in Manhattan and were facing eviction proceedings initiated on the basis of section 27-2076(b) by her landlord, former defendant Emad Ibrahem. By Order dated December 6, 2007, the Court ruled that the Anti-Injunction Act, 28 U.S.C. § 2283, barred Sierra's claims for injunctive relief against Ibrahem but did not bar her remaining claims against him or any of her claims against the other defendants,

the City of New York, the N.Y.C. Department of Buildings and its Commissioner, and the N.Y.C. Department of Housing Preservation and Development and its Commissioner (collectively, the "City defendants"). The Court explained the reasons for these rulings in a Memorandum dated January 2, 2008. Shortly after the December 6, 2007 rulings, however, Sierra and Ibrahem entered into a stipulation whereby Sierra, in exchange for $19,000, vacated her SRO and agreed to drop her suit against Ibrahem. Subsequently, on consent of all parties, Ibrahem was dismissed from the suit. See Stipulation for Dismissal of Defendant Emad Ibrahem, signed December 10, 2007. Sierra is now without a residence of her own and has been living with her children in an older son's apartment. Affidavit of Juana Sierra in Opposition, Exhibit A to Attorney's Declaration of Ami Sanghvi in Opposition to Defendants' Motion to Dismiss ¶ 12.

After Sierra's settlement with Ibrahem, the City defendants moved to dismiss the suit on the ground that, because Sierra no longer occupied an SRO and, in their view, was unlikely to find one that she could afford, section 27-2076(b) no longer caused her any "injury in fact" and thus she lacked standing to challenge it. Sierra countered that she already had suffered, and continues to suffer, economic injury for which the City defendants remain liable as a result of the City's past enforcement of the provision against her that led to her leaving the SRO, and that she suffers additional ongoing injury because section 27-2076(b) bars her from considering, as part of her current apartment search, SROs that otherwise would be

available to her.  On January 14, 2008, the Court heard oral argument on the City defendants' motion and, pursuant to Federal Rule of Civil Procedure 43(e), questioned, under oath, both Sierra and Dr. Moon Wha Lee, Assistant Commissioner for Housing Policy Analysis and Statistical Research of the New York City Department of Housing Preservation and Development, who had submitted a factual affidavit on behalf of the City defendants.  See Affidavit of Moon Wha Lee, submitted with City Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint.  Even after the hearing, however, the Court was left with insufficient information about the availability of SRO apartments, and, accordingly, the Court solicited further affidavits from both parties.

In response, Sierra submitted affidavits from: Rebecca Widom, Director of Research of the Homelessness Outreach and Prevention Project of the Urban Justice Center ("Widom Aff."); Krista Hanson, a Master's Degree candidate at New York University's Steinhardt School of Culture, Education, and Human Development and an intern at the Urban Justice Center ("Hanson Aff."); Stephan Russo, Executive Director of Goddard Riverside Community Center; Jim Provost, senior attorney at Manhattan Legal Services; and Christopher Schwartz, supervising attorney at MFY Legal Services, Inc.  The City defendants submitted an additional affidavit from Dr. Lee ("Lee Reply Aff."). Having now carefully reviewed all pertinent materials, the Court concludes that the motion to dismiss must be denied.

The Fair Housing Act makes it unlawful "to refuse to sell or

rent . . . or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status." 42 U.S.C. § 3604(a) (emphasis added). "The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995).

The FHA confers standing to challenge discriminatory housing practices (such as making dwellings unavailable because of a person's familiar status) on any "aggrieved person," 42 U.S.C. 3613(a)(1)(A), which is defined as a person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur," 42 U.S.C. 3602(i). See LeBlanc-Sternberg, 67 F.3d at 424. Congress intended standing under the FHA to "extend to the full limits of Art. III." Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982) (internal quotation marks omitted). Thus, "the sole requirement for standing to sue under [the FHA] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" Id. (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Here, Sierra claims past, present, and future injuries as the result of the City defendants' alleged violations of the FHA. The alleged injuries, moreover, support claims both for damages and for injunctive relief.

As to damages, Sierra's complaint alleges that the New York City Department of Buildings issued Ibrahem a Notice of Violation for

4

allowing Sierra to occupy the SRO with her children in violation of HMC section 27-2076(b), and that Ibrahem commenced eviction proceedings against Sierra based on that violation. See Complaint for Preliminary and Permanent Injunction; Declaratory Judgment; and Damages for Violation of the Fair Housing Act and the New York State Human Rights Law ¶¶ 4-5 ("Compl."). Although it is true that, as a result of her subsequent settlement with Ibrahem, Sierra agreed to vacate the SRO before the eviction proceedings terminated, it does not necessarily follow that that agreement precludes her from maintaining that her current situation - that she is without a home and, according to the City defendants' own expert, likely to face substantial difficulty in finding another one at the rent she paid to Ibrahem, see Lee Reply Aff. ¶ 4 (reporting a mere 1.59% vacancy rate for all apartments with rents up to $600) - is a direct result of the City's enforcement of section 27-2076(b). This injury, while not yet quantifiable in dollars because it is ongoing, is more than adequate to confer standing. See 42 U.S.C. § 3613 (permitting award of actual damages to FHA plaintiffs); cf. Havens Realty, 455 U.S. at 370-71 (finding that irrespective of possible mootness of plaintiffs' request for injunctive relief, fact that plaintiffs continued to seek damages meant that case was not moot).

As to injunctive relief, Sierra has made a sufficient (if thin) showing that section 27-2076(b) continues to limit her available housing options. On this issue, the City argues primarily that the number of available SROs that Sierra could afford is so small that it is extremely unlikely that she will be able to find

5

one, and, consequently, highly speculative that she will again be subject to section 27-2076(b), since she will most likely wind up living in a non-SRO dwelling.[1] The Court agrees that if, in fact, there were no, or virtually no, SRO-type apartments in New York City that Sierra could afford to rent, the potential future enforcement of section 27-2076(b) might not cause her any ongoing injury. But the parties' experts sharply dispute the factual question of how many available SROs section 27-2076(b), in practice, bars Sierra from renting.

Thus Widom, one of Sierra's experts, concludes, based on the 2005 New York City Housing and Vacancy Survey ("2005 HVS"), that there are 1,153 vacant available SROs and that SROs have a higher

---

[1] The City makes the additional, and rather remarkable, argument that, even if Sierra were to succeed in finding a suitable SRO, it is unlikely that she again would be evicted because, first, the City might choose not to enforce section 27-2076(b) as to her, and, second, even if it did so, Sierra's new landlord nonetheless might choose not to evict her. See City Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint at 3. The Court is baffled by this argument, as no theory of standing requires a plaintiff actually to violate a law before raising a facial challenge to an allegedly unlawful statute. See, e.g., Vt. Right to Life Comm. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000) ("A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it." (internal quotation marks omitted)). Indeed, the idea that, in order to bring suit, Sierra would have to break the law, find a landlord willing to break the law with her, and then wait until the City chose to enforce that law against her - and the landlord to evict her based on that enforcement - is preposterous. In any event, the FHA itself clearly forecloses the City defendants' argument by specifically granting standing to anyone who believes that he or she "will be injured by a discriminatory housing practice that is about to occur," 42 U.S.C. 3602(i) (emphasis added).

vacancy rate than apartments generally.  Widom Aff. ¶¶ 10, 13-14.
Lee, however, criticizes Widom's manipulation of the 2005 HVS data as
failing to take account of the data's inherent sampling errors,
contends that some of the survey's data are flawed (such that the
number of vacant available SROs is 789, not 1,153), and argues that
Widom's calculations do not account for SRO-type units that are
occupied by non-profits and therefore exempt from HMC section 27-
2076(b).  Lee Reply Aff. ¶¶ 7, 11.  Although Lee admits that the
range of asking rents for vacant available SROs is $250 to $5,846
(such that some, at least, are priced below Sierra's threshold of
$600), he speculates - without attribution - that an apartment on the
low end of that spectrum is "almost certainly an extremely small
sleeping room with a bed" that Sierra could not inhabit with her
children.  Id. ¶ 10.

   This exchange, and others,[2] makes clear to the Court that the
dispute over the factual underpinnings of Sierra's claim to injury
warranting injunctive relief is impossible to resolve at this stage
of the litigation, but that Sierra has adduced sufficient evidence to
retain standing for injunctive purposes (as well, as already noted,

---

   [2] Hanson, another of Sierra's experts, analyzes a non-exhaustive list of roughly 350 known SRO buildings identified to her by the West Side SRO Law Project and concludes that these contain around around 26,000 "B units," the label typically given to SROs, see HPD Online Glossary, New York City Department of Housing Preservation and Development, at http://www.nyc.gov/html/hpd/html/pr/hpd-online-glossary.shtml.  Hanson Aff. ¶¶ 4, 11.  Lee counters that Hanson's data does not measure the number of units that are actually available for rent.  Lee Reply Aff. ¶ 15.  Lee also criticizes Sierra's remaining affidavits as "anecdotal." Id. at 16.

for compensatory purposes). Indeed, the battle of statistics quite aside, one cannot blink the fact that Sierra has <u>already occupied</u> an SRO unit that was both affordable and large enough for her family. This strongly implies that at least some other, similar units would now be available to her. The Court therefore concludes that Sierra has made a showing of ongoing injury sufficient to establish standing to seek injunctive relief, even apart from the harm she has already suffered that gives her standing to seek damages. See <u>Fair Hous. in Huntington Comm. v. Town of Huntington</u>, 316 F.3d 357, 361 (2d Cir. 2003) (finding defendants' challenge to "the factual underpinnings" of plaintiffs' allegations in support of their standing to be "premature" and noting that defendants could raise it at later stages of litigation, after further factual development); <u>see also</u> <u>Gladstone, Realtors v. Bellwood</u>, 441 U.S. 91, 115 & n.31 (1979) (finding that plaintiffs had alleged sufficient facts to establish standing at the motion to dismiss stage but noting that defendants could contest the facts at trial).

    For the foregoing reasons, the City Defendants' motion to dismiss for lack of standing is denied. Counsel are directed to convene a conference call with the Court by no later than 5 p.m. on March 4, 2008, to schedule further proceedings in this case.

    SO ORDERED.

Dated: New York, NY
March 3, 2008

                                  JED S. RAKOFF, U.S.D.J.