

Urban Justice Center
123 William Street, 16th floor, New York, NY 10038
Tel: (646) 602-5600 • Fax: (212) 533-4598
www.urbanjustice.org

April 7, 2008

*By facsimile*: (212) 805-7935

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 1340
New York, NY 10007

    Re:    **Sierra v. City of New York, 07-cv-6769 (JSR)**

Dear Judge Rakoff:

Plaintiff Sierra respectfully submits this letter brief in further support of her Motion for Summary Judgment. Following oral argument, this Court directed the parties to submit additional briefing on the legislative history of the 1988 amendments to the Fair Housing Act and the impact and/or relevance of HUD guidelines presented by Defendants for the first time during oral argument. The legislative history of the Fair Housing Act, as well as agency and court interpretation, demonstrate that Housing Maintenance Code (HMC) § 27-2076(b) cannot survive any level of scrutiny because it impermissibly discriminates against families with children. Additionally, the HUD guidelines presented by Defendants are wholly irrelevant.

### I. Introduction

This facial discrimination action brought under the Fair Housing Act to challenge HMC § 27-2076(b), is similar to those that have been brought in other Circuits. As the Tenth Circuit explains, when determining whether a local ordinance facially discriminates against a protected class of persons in violation of the Fair Housing Act, the explicit terms of discrimination control. *Bangerter v. Orem*, 46 F.3d 1491, 1500 (10th Cir. 1995) (finding that the appropriate Title VII parallel is *International Union, United Auto., Aerospace & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) rather than the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Thus, "a facially discriminatory policy is one which on its face applies less favorably to a protected group." *Community House v. Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007) citing *Frank v. United Airlines*, 216 F.3d 845, 854 (9th Cir. 2000). Plaintiff Sierra has demonstrated that the HMC provision on its face applies less favorably to families with children – a protected group under the Fair Housing Act – because it explicitly bans families with children between the ages of one and sixteen from living in rooming units, such as Single Room Occupancy (SRO) units.

Urban Justice Center

Contrary to Defendants' assertion that they need only articulate a reason for the outright discrimination against families with children,[1] the Sixth, Ninth, and Tenth Circuits have made clear that in order to justify facial discrimination, Defendants must show either: (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes. *Community House v. Boise*, 490F. 3d at 1050 citing *Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir 1996); *Bangerter*, 46 F.3d at 1503-04. Thus, "[r]estrictions that are based upon unsupported stereotypes or upon prejudice and fear stemming from ignorance or generalizations, for example, would not pass muster." *Bangerter*, 46 F. 3d at 1504. Additionally, lower courts in both the Seventh and Third Circuits found that the burden is on the defendant to justify facially discriminatory classifications. *See Alliance for the Mentally Ill v. City of Naperville*, 923 F. Supp. 1057, 1072 (N.D. Ill. 1996); *Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth*, 876 F. Supp. 614, 620 (D. N.J. 1994) (finding that "[a] justification must serve, in theory and in practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 149 (3d Cir.1977)[2]).

Defendants have failed to meet this standard. Defendants appear to be arguing that there are concerns regarding the health, safety, and welfare of children living in SRO buildings.[3] However, Defendants have failed to show how banning families with children from living in SRO units actually benefits them or how the ban responds to legitimate safety concerns raised by the individuals affected. Instead, Defendants have relied on generalized perceptions of fear and gross stereotypes about the population living in SRO buildings. In highlighting the fact that the ban on families with children does not apply to non-profit organizations, Defendants' counsel argued that it was "because there is a different population that is living in those building and they are managed differently than the privately owned where there are single adults who may be have drug or some other type of disability. At one point the city or state were allowing people who have mental problems." (Tr. 31: 9-13). Such unsupported stereotypes and generalizations about low-income tenants are not sufficient to justify discrimination.[4]

---

[1] (Tr. 28:18-24).
[2] Although *Resident Advisory Board v. Rizzo* does not involve a facial discrimination challenge, it lays out an important standard for the justification that courts have relied upon.
[3] Although during oral argument this Court raised concerns about whether bathroom facilities in SRO building are sanitary, Defendants themselves have not raised this as part of their health and safety justification.
[4] Even under the rational basis standard, Defendants have failed to articulate a legitimate government interest in banning families with children between the ages of one and sixteen from

individual rights • social change

Similarly, Defendants rely on statements from the New York City legislative history of 1960, characterizing "slums as prime breeders for juvenile delinquency" but offer no supporting evidence for these types of conclusions. *See* Affidavit of Mario Ferrigno dated August 16, 2007 at ¶¶ 5-6, Ex. B; *see also* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment dated March 14, 2008. Since that time, the New York City legislature, through the enactment of the New York City Human Rights Law, has demonstrated its clear commitment to nondiscrimination in housing and protecting families with children from such discrimination -- and they have not carved out an exception for SRO living. *See* N.Y.C. Code §8-101 *et seq.* (2007). More recently, in 1991, when the legislature passed a comprehensive set of amendments to the City's Human Rights Law, the purpose, in part, was to substantially expand the reach of the law and the enforcement tools. *See* N.Y.C. Code § 8-101. Thus, the prohibition against familial status discrimination in housing, which had already existed in the law, was placed squarely in the policy statement. *Id.* As discussed in further detail below, the 1988 Fair Housing Act Amendments were passed to eliminate discrimination on the basis of handicap and familial status in order to further the original goal of integrated living.

## II. Legislative History of the Fair Housing Act and subsequent interpretation by Courts and HUD

The 1988 Fair Housing Act Amendments produced a relatively small amount of legislative interpretive material. *See* R. G. Schwemm, Housing Discrimination: Law & Litigation § 5-12 (1990). One of the most important documents with significant guidance regarding the purposes and intent behind the bill was the House Judiciary Committee's report. Fair Housing Amendments Act of 1988 House Report, U.S. House of Representatives (Judiciary Committee), H.R. REP. 100-711 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173. (hereinafter "House Report") According to the House Report, the bill served three main purposes: (1) to provide an effective enforcement system, subject to judicial review to better effectuate the goals of eradicating housing discrimination; (2) to extend equal housing opportunities to handicapped persons; and (3) to extend protections to families with children who have been victims of unfair and discriminatory housing practices. *Id.* at 13.

The House Report cites various reports demonstrating the national prevalence of discrimination against families with children and the devastating effects of their exclusion from many types of housing. *Id.* at 19-21. Many members of Congress who spoke in support of the bill cited a HUD survey conducted in 1980 which showed that approximately 40% of American households have children under 18, but 25% of all rental units do not allow children and 50 % were subject to restrictive policies that limited the ability of families with children to live in those units. *See*

---

SROs or why there are no less discriminatory methods to address the purported health and safety concerns.

Urban Justice Center

*e.g.*, 134 CONG. REC. H4603 (June 22, 1988); *see also* R. Marans & M. Colten, "Measuring Restrictive Rental Policies Affecting Families with Children: A National Survey" Office of Policy Planning and Research, Department of Housing and Urban Development, 1980. As one Congressman stated, "[t]he Fair Housing Amendments Act would prohibit discrimination against families with children. This means that landlords and owners cannot simply say, 'No children.'" 134 CONG. REC. H4603 (statement of Rep. Pepper). The House Report also found that despite the existence of some states with some form of prohibition against discrimination against families with children, there remained a widespread problem. House Report at 19-21. Thus, the intent of Congress was clear – they sought to eliminate the outright exclusion and ban of children from dwellings. HMC § 27-2076(b) flies in the face of this intent.

Indeed, although the bill included certain exemptions, an exemption for SROs was not one of them. For example, Congressman Fish from New York pointed out that the bill made three exceptions to the prohibition, one of which was to "amend section 807 of the existing act to make it clear that reasonable local occupancy and zoning codes concerning the acceptable *number* of persons per unit would continue to apply." *See* 134 CONG. REC. H4603 (statement of Rep. Fish) (emphasis added)[5]. According to the House Report, "[r]easonable limitations by governments would be allowed to continue, as long as they were applied to *all* occupants and did not operate to discriminate on the basis of race, color, religion, sex, national origin, handicap, or familial status." House Report at 31 (emphasis added)[6]. Despite Congressman Fish's extensive involvement in the drafting and amending of the Bill[7], he did not advocate for an exception with regard to the health and safety concerns of children living in certain types of dwellings. While SRO housing may only be common in urban areas of New York and California, poor housing conditions were and are not uncommon throughout America and Congress was not ignorant of that fact. Yet, there were no amendments or debates about creating an exception for codes restricting the ability of families with children from living in dwellings with poor housing conditions.[8]

Given the sparse legislative history of the 1988 Fair Housing Act Amendments, the Supreme Court's decision in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205 (1972) is an important source of judicial guidance for understanding the congressional intent behind the Fair

---

[5] The other two exceptions to the bill were to protect housing for senior citizens.
[6] The New York State Multiple Dwelling Law is such a reasonable occupancy standard related to the number of persons in a unit. Defendants have yet to address this law.
[7] Congressman Fish offered an amendment that provided that the parties to a HUD complaint would have the option of removing the case to a federal court where their right to a jury trial could be preserved. *See* 134 CONG. REC. H4605, H4675 (1988).
[8] Congress enacted an exception in the prohibition against discrimination against handicapped which protected the safety of others. 42 U.S.C. § 3604(f)(9).

individual rights • social change

Urban Justice Center

Housing Act generally. *See also* Schwemm, Housing Discrimination at § 7. In *Trafficante*, the Supreme Court established four tenets of statutory construction regarding the Fair Housing Act: (1) the statute should be construed broadly; (2) integration was an important goal of the Act; (3) in appropriate circumstances, Title VII decisions can be relied upon to help interpret Title VIII; and (4) interpretations by the Department of Housing and Urban Development (HUD) are entitled to a good deal of weight in construing the statute. *Trafficante*, 409 U.S. 205.

First, Courts have read the Fair Housing Act broadly and as an attempt to change the character of the existing housing market in order to eliminate widespread discrimination. *See Cabrera v. Jakabovitz*, 24 F.3d 372, 390 (2d Cir.), *cert. denied*, 115 S. Ct. 205 (1994); *Huntington Branch, NAACP v. Town on Huntington*, 844 F.2d 926, 935 (2d Cir.), *aff'd per curiam*, 488 U.S. 15 (1988). Congress contemplated older legislation and did not seek to preempt any law in line with the goals of the Fair Housing Act Amendment but did state that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615. Therefore, a local ordinance such as the HMC provision at issue here, enacted prior to the passage of the Fair Housing Act Amendments as well as the original Fair Housing Act, is invalid because it is not aligned with the intent of the federal protections. It does not matter that the 1960 New York Legislature passed the provision with the good intentions of protecting children. *Bangerter*, 46 F.3d at 1501. What matters today is that HMC § 27-2076(b) functions as an impermissible ban against families with children because Congress intended the Fair Housing Act to provide families with children with the same protection as the other classes of people protected under the federal statute.

Second, the goal of integration is reached when protected classes of people are not barred from living in a particular place. Simply citing health and safety reasons is not sufficient justification for the outright ban of a protected class of people, such as families with children. An analogous situation related to gender may demonstrate Plaintiff's concerns more clearly. For example, Defendants cannot justify a policy preventing women from residing in a particular area even if there was some evidence of attacks on women in that area which compromised their health, safety, and welfare. *See U.S. v. Reece*, 457 F. Supp. 43 (D. Mo. 1978). Similarly, a ban on families with children cannot be justified - particularly not with dated and irrelevant evidence tangentially related to unspecified health and safety concerns.

Third, as Plaintiff has argued previously, the appropriate Title VII standard to apply to a facial challenge is the standard delineated by the Supreme Court in *Johnson Controls* rather than the *McDonnell Douglas* burden-shifting approach. As relevant Title VIII suggests, Defendants must demonstrate that the ban either (1) benefits families with children or (2) responds to legitimate safety concerns of individuals affected. Defendant cannot demonstrate either because a complete and outright ban on families with children is impermissible under the Fair Housing Act.

5

Fourth, HUD guidelines and decisions have been issued which provide critical guidance on how the Fair Housing Act should be interpreted. On January 23, 1989, HUD issued a final rule after receiving comments, which adopted most of the proposed regulations with some modest changes. *See* Implementation of the Fair Housing Amendments Act of 1988 - Final Rule, Preamble II, 54 Fed. Reg. 3232 (Jan. 23, 1989) (to be codified at 24 C.F.R. Parts 14, 100, 1003, 104, 105, 106, 109, 110, 115, and 121) (hereinafter "HUD Preamble II"). Part 100 of the C.F.R. is the most instructive for better understanding what is unlawful under the Fair Housing Act.

When discussing exemptions in the law, HUD specifically notes that § 3607(b)(1) was meant to allow for "reasonable governmental limitations on occupancy to continue as long as they are applied to *all occupants*, and do not operate to discriminate on the basis of race, color, religion, sex, handicap, familial statues, or national origin." HUD Preamble II (emphasis added) citing House Report. The HMC provision is not a reasonable governmental limitation on occupancy because it is not applied to all occupants but rather makes a distinction based solely on the protected status of families with children. Therefore, it does not fall within the exception and such a ban is not permissible under the Fair Housing Act or HUD's interpretation of it.

Additionally, HUD has issued many decisions invalidating restrictions prohibiting or limiting the ability of families with children to reside in particular dwellings. For example, HUD has found that children of certain ages cannot be banned, limitations based on the number of children in a family are illegal, and unsubstantiated concerns about children are impermissible to discriminate:

- *HUD v. Schuster* (HUD ALJ 1995) - finding a condominium rule prohibiting residency to a child less than 14 years of age to be discriminatory without inquiring into the purpose for the restriction because it communicated a preference against families with children, *available at:* http://www.hud.gov/offices/oalj/cases/fha/pdf/schuster.pdf;
- *HUD v. Guglielmi* (HUD ALJ 1990) - finding a childless familial status condition for a mobile home community to be discriminatory, *available at*: http://www.hud.gov/offices/oalj/cases/fha/pdf/guglimi.pdf;
- *HUD v. Frisbie* (HUD ALJ 1992) - finding direct evidence in a statement indicating that the owner did not allow children to be residents in the property sufficient to support a finding of discrimination without inquiry into the reasons behind the ban, *available at:* http://www.hud.gov/offices/oalj/cases/fha/pdf/frisbie.pdf;
- *HUD v. Edelstein*, (HUD ALJ 1991), *aff'd without opinion*, 978 F.2d 1258 (6th Cit. 1992) - rejecting the safety justification for excluding children because respondent's reliance on a vague report of an incident of harm in a decade was not adequate, *available at:* http://www.hud.gov/offices/oalj/cases/fha/pdf/edelstei.pdf;
- *HUD v. Lewis*, Fair Housing (HUD ALJ 1992) - finding unsupported assumptions regarding the behavior of children of a certain age insufficient justification for the disparate treatment, *available at*: http://www.hud.gov/offices/oalj/cases/fha/pdf/lewis.pdf;

6

- *HUD v. Sams*, Fair Housing (HUD ALJ 1993) - finding discrimination by direct evidence of statement that the owner doesn't rent to families with "too many children", *available at*: http://www.hud.gov/offices/oalj/cases/fha/pdf/sams.pdf.

HUD has also rejected attempts to segregate families with children to certain areas of a housing complex or prohibit their occupancy on the basis of safety justifications. S*ee* HUD Preamble II; *see also HUD v. Lee*, (HUD ALJ 1996), *available at*: http://www.hud.gov/offices/oalj/cases/fha/pdf/lee.pdf; *HUD v. French* (HUD ALJ 1995), *available at*: http://www.hud.gov/offices/oalj/cases/fha/pdf/french.pdf.

In the same way, courts have interpreted overbroad safety justifications to be invalid forms of discrimination. The ability to choose what is best for a child and how best to protect that child is the consideration of the caretaker and should be no less assumed so for low-income tenants who choose SRO housing over homelessness. *See U.S. v. Grishman*, 818 F. Supp. 21 (D. Me. 1993)(granting summary judgment on the basis of familial status discrimination under the Fair Housing Act when a reason for denying a family tenancy was a fear that the features of the property and the neighborhood would be a serious and real danger to the children because that safety decision is for the tenant); *see also Fair Housing Congress v. Weber*, 993 F. Supp. 1286 (C.D. Cal. 1997). Similarly, a landlord cannot enforce a sex-based occupancy restriction on the basis of health and safety concerns. *See U.S. v. Reece*, 457 F. Supp. 43. In *Reece*, the Court struck down a policy that excluded single women without cars from renting certain apartments in a poorly lit neighborhood and rejected the defense of attempting to protect the women from the risk of assault or rape walking to and from the apartment as insufficient and in violation of the Fair Housing Act. *Id.* at 48. The court found that "an allegedly benign motivation, especially one as paternalistic and overbroad as the one presented here, cannot provide a defense." *Id.* Accordingly, Defendants in this case can not fall back on an allegedly benign, but paternalistic and overbroad motivation regarding the protection of children, to overcome the discrimination against families with children.

### III. HUD Guidelines presented in Court at oral argument by Defendants

During oral argument on March 26, 2008, Defendants' counsel, for the first time, presented several random portions of HUD regulations in support of their defense of the HMC provision.[9] Both provisions provided to this Court address HUD subsidized housing – and counsel admitted as much. The general description provides that the "[i]n the HUD Housing Choice Voucher Program and the HUD certificate program, HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1 (2007). Since this case is not about

---

[9] Counsel presented 24 C.F.R. 982.601 and 24 C.F.R. 982.401.

7

Urban Justice Center

HUD subsidized housing, Defendants' citations to these regulations are not compelling and are irrelevant.

Furthermore, despite carefully combing through HUD guidelines in an effort to save their discriminatory law, Defendants failed to mention in Court that the HUD Final Rule Preamble states that, "while the Department has developed occupancy guidelines for use by participants in HUD housing programs, these guidelines are designed to apply to the types and sizes of dwelling *in HUD programs* and they may not be reasonable for dwellings with more available space and other dwelling configurations than those found in HUD-assisted housing." 54 Fed. Reg. 3232, Subch. A, Section 100.10. Additionally, the Final Rule provides that "owners and managers may develop and implement reasonable occupancy requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit." *Id.*; *see also* Occupancy Standards Notice of Statement of HUD Policy, 63 Fed. Reg. 243 (December 18, 1998). Therefore, as Plaintiff has argued previously, while reasonable occupancy standards are permissible, a ban on families with children cannot be sustained under the Fair Housing Act or under HUD's interpretation of the Act.

### IV. Conclusion

For the above stated reasons, Plaintiff Sierra respectfully requests that this Court grant her motion for summary judgment. Defendants cannot sustain a provision which bans families with children from living in a particular type of housing because the plain language of the law flies in the face of the Fair Housing Act and all that it was intended to protect.

Respectfully submitted,

Ami Sanghvi (AS5128)
URBAN JUSTICE CENTER
Homelessness Outreach & Prevention Proj.
Leslie T. Annexstein (LA 0430)
Ami T. Sanghvi (AS 5128)
123 William Street, 16th Floor
New York, New York 10038
Tel. (646) 602-5643

WEST SIDE SRO LAW PROJECT
Goddard Riverside Community Center
Martha Weithman (MW 3333)
647 Columbus Avenue
New York, New York 10025
Tel. (212) 799-9638