**Urban Justice Center**
123 William Street, 16th floor, New York, NY 10038
Tel: (646) 602-5600 • Fax: (212) 533-4598
www.urbanjustice.org

April 25, 2008

*By facsimile*: (212) 805-7935
Honorable Jed S. Rakoff
United States District Judge
500 Pearl Street, Rm. 1340
New York, NY 10007

                **Re:**     Sierra v. City of New York, 07-cv-6769 (JSR)

Dear Judge Rakoff:

Plaintiff Sierra respectfully submits this reply brief in response to Defendants' letter brief dated April 18, 2008. ("Def. Let. Br.")[1]

**Appropriate standard of review**

Plaintiff asserts a challenge under a federal anti-discrimination statute, the Fair Housing Act. As Plaintiff previously explained, the appropriate standard of review for analyzing an ordinance under the Fair Housing Act is the "more searching inquiry" applied by the Sixth, Ninth, and Tenth Circuits. *Cmty. House v. Boise*, 490 F.3d 1041 (9th Cir. 2007); *Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285 (6th Cir 1996); *Bangerter v. Orem*, 46 F.3d 1491 (10th Cir. 1995). In order to permit facial discrimination, the more searching inquiry requires that, "a defendant must show either: (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected rather than being based on stereotypes." *Id.*

Plaintiff Sierra has demonstrated that the HMC provision on its face excludes families with children – a protected group under the Fair Housing Act. Defendants have failed to show that the restriction benefits the protected class or that it responds to legitimate safety concerns. Contrary to Defendants' assertion that Plaintiff wishes this Court turn a "blind eye" to the conditions in SRO buildings, Plaintiff is requesting that this Court not allow Defendants to take refuge in a discriminatory law which bars families with children from a housing opportunity.

Defendants continue to defend the ban on families with children by importing a constitutional analysis into the statutory scheme, thereby erasing the rights extended to families with children

---

[1] Contrary to Defendants' assertion that Plaintiff's failure to amend the Complaint should result in a dismissal, this Court made clear at oral argument for the Summary Judgment motions, that if the case continued after a decision on Summary Judgment is rendered, Plaintiffs will then have an opportunity to amend the pleadings in accordance with Fed. R. Civ. P. 15. *See* Tr. 38:12-18.

Urban Justice Center

through the Fair Housing Act. Plaintiff is not asserting a constitutional challenge and does not argue for the constitutional standard of strict scrutiny. As the Ninth Circuit has pointed out, constitutional analysis is inappropriate because families with children are not a protected class for constitutional purposes. *Cmty. House, Inc. v. City of Boise*, 490 F.3d at 1050. Even if Defendants' proffered constitutional standard were correct, Defendants' legal analysis and application of such standard are flawed.

Defendants refer to the government's authority to legislate in the interest of protecting children's vulnerabilities, yet cite cases where the Courts have found the justifications to be insufficient. Def. Lt. Br. at 2-4 citing *Ramos* (invalidating local ordinance because defendant's non-specific health and safety concerns did not meet the intermediate scrutiny standard necessary to justify infringement on minor's right to travel); *Bellotti v. Baird*, 443 U.S. 622 (1979) (invalidating statute that unduly burdened a minor's right to seek abortion despite justifications for protecting children). Similarly, the Defendants' justifications in this case are insufficient. Additionally, Defendants attempt to articulate a preemption argument but rely on challenges involving local laws conflicting with federal statutes where Congressional intent is unclear. *See Gregory v. Ashcroft*, 501 U.S. 452 (1991)(upholding mandatory retirement requirement because Congress did not intend to protect appointed state judges under the federal Age Discrimination in Employment Act of 1967); *see also Maryland v. Louisiana*, 451 U.S. 725, 746-7 (1981); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Here, the language of the HMC provision is completely contrary to the plain language of the Fair Housing Act and its Congressional intent and Defendants' do not suggest otherwise.[2]

Furthermore, Defendants confuse their own arguments by offering a variety of constitutional standards. Defendants previously argued for rational basis review. *See* Def. Mem. of Law in Opposition to Preliminary Injunction at 6-7. However, in their most recent submission, Defendants rely heavily on the Second Circuit's decision in *Ramos v. Town of Vernon*. 353 F.3d 171 (2d Cir. 2003). There, the Second Circuit determined that (a) the appropriate level of review was intermediate scrutiny which requires that "the state must show that the challenged classification serves 'important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives'" and (b) the government's burden could not be met by reliance on reports of other municipalities. *Id.* at 185

---

[2] Similarly inapposite is Defendants reliance on cases where the challenged law did not affect a protected class of people as the Fair Housing Act does. *See City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989)(ordinance limiting use of dance halls to persons of aged 14 - 18 need only be rationally related to legitimate government purpose because it did not impinge on constitutionally protected right); *Richmond Boro Gun Club, Inc. v. City of New York*, 896 F. Supp. 276, 282 (E.D.N.Y. 1995)( legislature's judgment is entitled to wide latitude when law is enacted pursuant to police power to promote public safety *so long as* the law does not infringe on fundamental rights or suspect classes).

citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725-6 (1982). The court rejected assumptions that children are more vulnerable than adults without a showing of the "'requisite direct, substantial relations'" and found that defendants must show that the specific ordinance is the product of "reasoned analysis." *Id*. Defendants' reliance on *Ramos* is erroneous. First, *Ramos* implicates a constitutional analysis that is inappropriate in this case. Second, Defendants continue to argue that Section 27-2076(b) is valid because it "is *reasonably* related to a legitimate governmental interest – safeguarding the health and well-being of children." Def. Let. Br. at 2. (emphasis added). Thus, Defendants fail to meet the intermediate scrutiny standard they assert. Third, Defendants' reliance on a report from another State - the 2001 San Francisco report - is insufficient under *Ramos*. Fourth, Defendants have not put forward any reasoned analysis justifying the continued enforcement of a discriminatory law passed in 1960 prior to the Amendments to the Fair Housing Act, which made clear that families with children are a protected class.

Additionally, Plaintiff Sierra contends that Defendants' regulations cannot bar her from housing opportunities simply because she has children. Hence, Defendants' reliance on an eminent domain case, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982), to argue that states can regulate landlord-tenant relationships is wholly irrelevant. Similarly, Defendants' reliance on the <u>dissent</u> in *U.S. v. Starrett City Associates*, 840 F.2d. 1096 (2d Cir. 1988), *cert denied*, 488 U.S. 946 (1988), is unpersuasive. Def. Lt. Br. at 4; *see also* Pl. Let. Br. at 5. In fact, contrary to Defendants' assertions, the HMC provision is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" because it impermissibly bans families with children from certain housing without sufficient justification. *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).[3]

Finally, Defendants completely mischaracterize *In the Matter of Nicole TT*. 190 A.D.2d 919 (3d Dept 1985). In that case, the court decided to terminate parental rights for a variety of reasons that went far beyond the mother's living situation and included the caseworker's observations such as "the children were ill-clad, in dirty clothing, with dried food matted in their hair; and a wide variety of medicines were located on a table in the living room within easy reach." *Id*. at 920. Only one of the many factors considered by the court referred to where the mother lived as it did not comply with the mandate of establishing a plan for the return of her three children. *Id*. More importantly, in that case, the family would have violated New York State occupancy standards. Completely contrary to that situation, Plaintiff occupied <u>two</u> units with her two children and did not violate New York State occupancy standards.

---

[3] Defendants' reliance on *People v. Taddeo*, 62 Misc. 2d 833, 836 (County Ct. Onondaga Cty. 1969) is completely baffling. Their reliance on this case ignores extensive civil rights jurisprudence since the 1960's and suggests that New York City may pass any discriminatory law that restricts individual rights in the interest of its residents, and that is the Court's duty to ignore those guaranteed rights.

**Legislative History of the Fair Housing Act**

The legislative record demonstrates that Congress had no intention to carve out any particular type of housing, including SRO housing, despite the existence of substandard housing conditions throughout the country and despite the focus on other health and safety issues. Indeed, the Congressional record leading to the 1988 amendments to the Fair Housing Act is replete with pages of discussions regarding the health and safety concerns related to the prohibition against discrimination on the basis of handicap status. *See* Fair Housing Amendments Act of 1988 House Report, U.S. House of Representatives (Judiciary Committee), H.R. REP. 100-711 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173. ("House Report") For example, Congress noted that state and local governments sometimes falsely posit health and safety rationales to restrict the ability of individuals with handicaps to live in communities.[4]

Additionally, Plaintiff does not suggest that Congress intended to completely disallow valid local occupancy standards. *See* Plaintiff's Mem. Of Law in Support of Order to Show Cause for T.R.O. and Prelim. Inj. at pp. 14-15. In *City of Edmonds v. Oxford House, Inc.*, the Supreme Court held that "§ 3607(b)(1) does not exempt prescriptions of the family-defining kind. 514 U.S. 725, 728 (1995). Instead, § 3607(b)(1)'s absolute exemption removes from the Fair Housing Act's scope only total occupancy limits, i.e. numerical ceilings that serve to prevent overcrowding in living quarters." The HMC is not a total occupancy limit as it is not a numerical ceiling, but rather an absolute restriction on families with children living in the unit. Moreover, the Supreme Court found that the maximum occupancy restrictions which are exempt are those which "apply uniformly to *all* residents of *all* dwelling units." *Id*. at 733 (emphasis in original) (internal citations omitted). Because the HMC provision does not apply to all occupants but rather makes a distinction based solely on the protected status of families with children, it does not fall within the exception and is therefore not permissible under the Fair Housing Act.

Finally, contrary to Defendants' assertions, Congress was certainly concerned about the prevalence of discrimination against families with children. Def. Let. Br. at 6. While affordability was also a concern, the main reasoning behind the passage of the statute was the high percentage of families with children being denied housing opportunities simply because of their status. *See* House Report. Defendants cite to a point raised by <u>opponents</u> of the addition of familial status as a protected class. Id. at 2220.

---

[4] "Another method of making housing unavailable to people with disability has been the application or enforcement of otherwise neutral rules and regulations on health, safety, and land-use in a manner which discriminates against people with disabilities. Such discrimination often results from false or over-protective assumptions about the needs of handicapped people . . . These and similar practices would be prohibited." *Id*. at 2173 (footnote omitted).

Urban Justice Center

**HUD Guidelines**

Defendants evade the only relevant HUD guidelines and guidance while continuing to press the application of irrelevant HUD guidelines. It is the HUD guidance on occupancy that actually applies to SRO units uniformly, and was specifically promulgated to provide direction consistent with the Fair Housing Act. Occupancy Standards Notice of Statement of HUD Policy, 63 Fed. Reg. 243 (December 18, 1998).

To come to their contorted conclusion that the HUD standards demonstrate Congressional intent that SRO housing is not suitable for families with children, Defendants ignore the HUD Preamble to the final regulations: "While the Department has developed occupancy guidelines for use by participants in HUD housing programs, these guidelines are designed to apply to the types and sizes of dwelling *in HUD programs* and they may not be reasonable for dwellings with more available space and other dwelling configurations than those found in HUD-assisted housing." 54 Fed. Reg. 3232.[5] This case is not about a HUD subsidized housing program. Indeed, Defendants are well aware that SROs in New York City, including the two SRO units in the instant case, are not the exclusive domain of HUD's subsidized housing program. Therefore Defendants' reliance on these regulations misses the mark.

**Conclusion**

For the reasons stated above and in previous pleadings, Plaintiff Sierra respectfully requests that this Court grant her motion for summary judgment.

Respectfully submitted,

*/s/ Ami Sanghvi*
Ami Sanghvi (AS5128)

| | |
|---|---|
| URBAN JUSTICE CENTER | WEST SIDE SRO LAW PROJECT |
| Leslie T. Annexstein (LA 0430) | Martha Weithman (MW 3333) |
| Ami T. Sanghvi (AS 5128) | 647 Columbus Avenue |
| 123 William Street, 16th Floor | New York, NY 10025 |
| New York, New York 10038 | Tel. (212) 799-9638 |
| Tel. (646) 602-5643 | |

---

[5] Second, Plaintiff has not suggested that participants in the program can only choose a unit "located in subsidized housing *projects*." Def. Let. Br. at 6 (emphasis added). In fact, Plaintiff argues that the cited HUD regulations refer to HUD subsidized housing, and mentions nothing of the "projects" as claimed by Defendants. Pl. Let. Br. at 7-8.

5