UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JUANA SIERRA,                           :
                                        :
            Plaintiff,                  :
                                        :
            -v-                         :          07 Civ. 6769 (JSR)
                                        :
CITY OF NEW YORK; NEW YORK CITY         :          MEMORANDUM ORDER
DEPARTMENT OF BUILDINGS, and PATRICIA   :
J. LANCASTER, in her capacity as        :
COMMISSIONER OF NEW YORK CITY           :
DEPARTMENT OF BUILDINGS; NEW YORK       :
CITY DEPARTMENT OF HOUSING              :
PRESERVATION AND DEVELOPMENT, and       :
SHAUN DONOVAN, in his capacity as       :
COMMISSIONER OF NEW YORK CITY           :
DEPARTMENT OF HOUSING AND               :
DEVELOPMENT; and EMAD IBRAHEM,          :
                                        :
            Defendants.                 :
---------------------------------------- x

JED S. RAKOFF, U.S.D.J.


        Section 27-2076(b) of the New York City Housing Maintenance

Code ("HMC") prohibits children under the age of sixteen from living

in single room occupancy units ("SROs"), which are rooming units that

lack either kitchen or sanitary facilities or both.  Until several

months ago, plaintiff Juana Sierra and her two young children

occupied two such units at 24 West 119th Street in Manhattan.  When

Sierra's landlord, former defendant Emad Ibrahem, commenced eviction

proceedings against her on the basis of section 27-2076(b), Sierra

filed this action against Ibrahem and various City agencies and

officials, asserting that section 27-2076(b) discriminates on the

basis of familial status in violation of the federal Fair Housing

Act, 42 U.S.C. § 3604(a) ("FHA").

        By Order dated December 6, 2007, further elaborated by a

Memorandum dated January 2, 2008, the Court ruled that the Anti-Injunction Act, 28 U.S.C. § 2283, barred Sierra's claims for injunctive relief against Ibrahem but did not bar her remaining claims against him or any of her claims against the other defendants, the City of New York, the N.Y.C. Department of Buildings and its Commissioner, and the N.Y.C. Department of Housing Preservation and Development and its Commissioner (collectively, the "City defendants"). Shortly thereafter, Sierra and Ibrahem entered into a stipulation whereby she vacated her SRO in exchange for $19,000; Ibrahem was subsequently dismissed from the suit on consent of all parties. The City defendants then moved to dismiss the suit as against them on the ground that, because Sierra no longer occupied an SRO and, in the City's view, likely would not occupy one in the future, she lacked standing to challenge section 27-2076(b). By Memorandum Order dated March 3, 2008, the Court denied the motion on the grounds that Sierra already had suffered damage from the City's enforcement of the provision and that she had adduced sufficient evidence to show that the provision was causing her ongoing injury.

On March 7, 2008, the remaining parties filed cross-motions for summary judgment, relying primarily on the briefing supplied to the Court in conjunction with plaintiff's prior motion for a preliminary injunction, which had been held in abeyance while the jurisdictional issues were decided. On the parties' representation that there were no disputed issues of fact, the Court was prepared to rule simultaneously on the summary judgment motions and the now-

revived preliminary injunction motion.  When it became clear that
some disputed factual issues existed, however, the Court resolved to
first address the summary judgment motions, which were putatively
case-dispositive.  Oral argument on these motions was held on March
26, 2008.  For the reasons set forth below, both sides' motions for
summary judgment must now be denied.

The Fair Housing Act makes it unlawful "to refuse to sell or
rent . . . or otherwise make unavailable or deny, a dwelling to any
person because of . . . familial status."  42 U.S.C. § 3604(a); see
also id. § 3602(k) (defining "familial status" as "one or more
individuals (who have not attained the age of 18 years) being
domiciled with," inter alia, "a parent").  "The phrase 'otherwise
make unavailable' has been interpreted to reach a wide variety of
discriminatory housing practices, including discriminatory zoning
restrictions."  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d
Cir. 1995).  Section 27-2076(b) of the New York City Housing
Maintenance Code, which explicitly provides that no SRO housing unit
"shall be occupied by a family with a child under the age of sixteen
years," subject to certain exceptions not applicable here, plainly
distinguishes between families with young children and those without,
and so is facially discriminatory under the FHA.

The Second Circuit has not yet ruled on the appropriate
standard for evaluating the validity of state statutes that are
facially discriminatory under the FHA, and the Courts of Appeals that
have considered the question are divided.  The Eighth Circuit has

3

subjected such statutes to "rational basis" scrutiny.  See Oxford

House-C v. City of St. Louis, 77 F.3d 249 (8th Cir. 1996);

Familystyle of St. Paul, Inc. v. City of St. Paul, Minn., 923 F.2d

91, 94 (8th Cir. 1991).  The Sixth, Ninth, and Tenth Circuits, by

contrast, have applied more searching scrutiny.  For example, the

Ninth Circuit has held that facially discriminatory restrictions pass

muster under the FHA only if the defendant shows either "(1) that the

restriction benefits the protected class or (2) that it responds to

legitimate safety concerns raised by the individuals affected, rather

than being based on stereotypes."  Cmty. House, Inc. v. City of

Boise, 490 F.3d 1041, 1050 (9th Cir. 2007); see also Larkin v. State

of Mich. Dept. of Soc. Servs., 89 F.3d 285, 290 (6th Cir. 1996);

Bangerter v. Orem City Corp., 46 F.3d 1491, 1503 (10th Cir. 1995).

The City defendants urge the Court to apply rational basis

scrutiny here, and therefore to uphold HMC section 27-2076(b) upon a

finding that it is "rationally related to a legitimate state

interest."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S.

432, 440 (1985).  In the alternative, the City defendants argue that

section 27-2076(b) withstands even heightened scrutiny, because,

according to the City defendants, the restriction operates to benefit

children by excluding them from housing that is detrimental to their

health.

The Court disagrees with the argument of the City defendants

(and the Eighth Circuit) that rational basis scrutiny is the

appropriate standard by which to assess a state or local statute that

facially violates the FHA.  "Rational basis" scrutiny typically comes

4

into play when one is assessing whether state legislation violates

the broad but general provisions of the Constitution, such as the

Fourteenth Amendment.  See, e.g., City of Cleburne, 473 U.S. at 440

(Equal Protection Clause); Beatie v. City of New York, 123 F.3d 707,

711 (2d Cir. 1997) (substantive due process).  But where, as in the

case of the FHA, Congress has promulgated a more specific prohibition

addressed to a more specific protected class – here, families with

children – a more heightened scrutiny is appropriate in order to

assure that Congress's specific mandate is not thwarted.  See Cmty.

House, 490 F.3d at 1050; Bangerter, 46 F.3d at 1503.  Because the FHA

expresses Congress's judgment that limitations on the housing

opportunities of families with children carry a presumption of

impropriety,[1] the Court agrees with plaintiff and with the Sixth,

Ninth and Tenth Circuits that it must apply a heightened level of

scrutiny to the rationales that the City claims underlie section 27-

2076(b).

The standard of heightened scrutiny appropriate to this

context is that set forth in Huntington Branch, NAACP v. Huntington,

844 F.2d 926 (2d Cir. 1988), viz.: "the defendant must prove that its

---

[1]  Indeed, the legislative history of the 1988 amendments to
the FHA, which extended the Act's coverage to families with
children and the disabled, indicates that Congress was responding
specifically to restrictions that excluded families with children
from certain housing.  See Fair Housing Amendments Act of 1988
House Report, H.R. Rep. No. 100-711, at 19 (1988), reprinted in
1988 U.S.C.C.A.N. 2173 (stating that "[i]n many parts of the
country families with children are refused housing despite their
ability to pay for it," and citing statistics about the
percentage of housing opportunities closed to families with
children).

actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." Id. at 936.  Although Huntington Branch involved the separate question of disparate impact under the FHA, the standard it sets forth is essentially a broader wording of the standard adopted by the Ninth Circuit in Community House in the same context as here, see 490 F.3d at 1050, and, for the reasons there stated, makes perfect sense in this case.

Applying this standard to the facts of this case, the Court finds the City's rationale for HMC section 27-2076(b) to be bona fide and legitimate "in theory," as the provision indisputably was passed with the intent of protecting children from unsafe and unsanitary living conditions thought to be detrimental to their welfare.  Upon enacting the provision as an amendment to the Housing Code, the City Council declared that single room occupancy units without toilet and kitchen facilities "do not constitute decent, safe and healthful living accommodations for children under the age of sixteen years," and that "the rearing of children of such age in such inadequate and undesirable dwelling accommodations endangers their health, safety and welfare and is detrimental to the welfare of the people of the city."  NYLS' New York City Bill Jacket, 1960 Local Law 6 (Jan. 19, 1960).  Similarly, in a Report to the Mayor on the amendment, the Deputy Mayor recommended approval because SRO units, with their "[l]ack of family privacy, lack of proper kitchen facilities and lack of adequate, private sanitary facilities[,] a[dd] up to a most unhealthy environment in which to rear children."  Report Re.

6

Proposed Local Law, Int. No. 331, Pr. Nos. 390, 464, Dated Feb. 2, 1960, Ex. B to Affidavit of Mario Ferrigno, Assistant Commissioner for Code Enforcement of the City of New York Department of Housing Preservation and Development.  The City defendants also have presented some evidence that, at least as a general matter (i.e., not specific to New York), children in SROs today suffer certain health and development problems.  See San Francisco Board of Supervisor's SRO Health and Safety Task Force and the Families in SROs Workgroup Subcommittee, Report on Families with Children Living in Single Room Occupancy Hotels in San Francisco 3 (May 15, 2001) (describing such health effects as difficulty breathing due to the presence of mold and pollution, decreased motor development due to small living space, and increased exposure to contagions).  Finally, the City defendants cite a regulation promulgated by the U.S. Department of Housing and Urban Development ("HUD") which permits the use of federal housing subsidies to rent SROs only by "[a] single person," not by a group of persons (including a family with children).  24 C.F.R. 982.602. While the regulation is not directly applicable to this case, it indicates, at the least, that HUD believes that SROs are not suitable for occupancy by more than one person.[2]

_____

[2]  At oral argument, the City defendants went a step further, claiming that various HUD regulations specifically restricted families with children from using subsidies on SRO housing.  See tr. 3/26/08.  For example, counsel directed the Court's attention to 24 C.F.R. section 982.601(b)(2), which provides that Public Housing Agencies are "not required to permit families . . . to use any of these special housing types [including SRO housing]" (emphasis added), and to 24 C.F.R. sections 982.401(b)(1), 982.401(c)(1), and 982.401(d)(1), which set forth as "housing quality standards" (i.e., the standards a

The crux of plaintiff's argument, however, is that whatever the merits of the <u>theory</u> behind section 27-2076(b), the provision does not, in <u>practice</u>, serve to protect children's safety.[3] Plaintiff argues, on the contrary, that rather than working to protect children, section 27-2076(b) almost exclusively harms them.

Specifically, plaintiff asserts that in practice, section 27-2076(b) is rarely enforced except at the initiation of landlords seeking a basis on which to evict their low-income tenants.  Under New York City law, property owners may not commence holdover proceedings to oust tenants they believe are violating City law unless the City department or agency charged with enforcing that law has already issued a formal violation.  <u>See</u> 9 N.Y. Codes, Rules & Regulations § 2524.3(c); <u>Munroe v. 344 East 76th Realty Corp.</u>, 448

---

Public Housing Agency must find a unit to meet before approving a "<u>family['s]</u>" use of a subsidy, <u>see</u> 24 C.F.R. § 982.305(a)(2) (emphasis added)) requirements that units contain kitchen and sanitary facilities.  The argument is contradicted by the regulations, however, which explicitly define a "family" to include not only families with children but also single people and groups of adults without children.  <u>See</u> 24 CFR 982.4(b) (providing definitions for Part 982, and referring for definition of family to section 982.201); 24 C.F.R. § 982.201(c) (defining a "family" as "a single person or a group of persons," including "a family with a child or children" or, for example, "two or more elderly persons or disabled persons living together").  The Court trusts that counsel's mistake was unintentional.

[3]  The Court somewhat loosely suggested during oral argument that, because the manner in which section 27-2076(b) operates in practice is relevant to its inquiry, plaintiff's challenge may have added an "as-applied" element in addition to its initial facial element.  <u>See</u> tr. 3/26/08.  Despite the misstatement, the current posture of this case presents a quintessential facial challenge, and is no less so because the City defendant's rationales for section 27-2076(b) must be examined against the backdrop of its actual implementation.

N.Y.S.2d 388, 390 (N.Y. Sup. Ct. 1982). According to Stephan Russo,

Executive Director of the Goddard-Riverside Community Center, the

requirement of a City-issued violation leads to the following cycle:

> SRO landlords often knowingly and willingly rent unit to
> families with children between the ages of 1 and 16
> years despite the City ordinance . . . The landlord
> permits a family to move in, allows the family to live
> and grow in their home for years . . . and then seeks to
> evict the tenants for being a family once a greater
> earning opportunity is realized by the landlord. In
> other words, once an SRO landlord has the opportunity to
> earn more money by gaining an empty unit through the
> eviction of a family with children, [the landlords],
> themselves, ask the City to inspect the families' SRO
> units to issue violations against the landlord for
> children living in those units.

Affidavit of Stephan Russo ("Russo Aff.") ¶ 13, Ex. B to Attorney's

Declaration of Ami T. Sangvhi in Support of Plaintiff's Order to Show

Cause for Temporary Restraining Order and Preliminary Injunction.

Moreover, Russo, whose organization provides assistance to SRO

residents facing eviction, stated that "every time we have

represented a family facing eviction because they live with children,

it has been the landlord that has reported such supposed violation to

the City" in order to get the documentation required to commence

eviction proceedings. Id. ¶ 14. Indeed, it appears that the course

of events leading to Sierra's eviction may have fit this pattern:

Ibrahem first initiated eviction proceedings against Sierra in 2005;

these proceedings were dismissed because no City agency had issued a

violation; some time thereafter, the New York City Department of

Buildings received an anonymous complaint regarding illegal

occupation of Ibrahem's building; the City subsequently inspected the

premises and issued a notice of violation; Ibrahem then commenced new

eviction proceedings against Sierra.  <u>See</u> Attorney's Declaration of

Martha Weithman in Support of Plaintiff's Order to Show Cause for

Temporary Restraining Order and Preliminary Injunction ("Weithman

Decl.") ¶¶ 6-8; Affidavit of Frank Angilletta ¶¶ 2, 4.[4]

Plaintiff further argues that because SRO housing is the only

type that many low-income families can afford, the effect of section

27-2076(b) is essentially to force these families into homelessness,

a condition far more detrimental to children's safety than living in

SROs.  <u>See generally</u> Russo Aff. ¶ 15; Affirmation of Christopher

Schwartz, Supervising Attorney at MFY Legal Services, Inc. ¶ 5,

submitted following Court Conference of Jan. 14, 2008.

Finally, plaintiff contends that there are non-discriminatory

means of protecting children from the safety hazards that the City

attributes to SRO housing, such as overcrowding, uncleanliness,

inadequate ventilation, mold, vermin, and the like.  Specifically,

plaintiff argues, the City could enforce restrictions already in

place aimed at controlling those problems directly.  <u>See, e.g.</u>, N.Y.

Mult. Dwell. Law § 248(12) (setting maximum occupancy standards for

SROs of two adults, or one adult and two children, per sleeping

room); HMC § 27-2011 (requiring building owners to keep "interior

shared space" clean); HMC § 27-2018 (requiring abatement of rodent

and insect infestation); HMC §§ 27-2057 to 2062 (setting standards

for lighting and ventilation of living units); HMC §§ 27-2065, 27-

---

[4]   The second eviction proceedings were also dismissed for
reasons not relevant here.  It was after Ibrahem commenced the
third eviction proceedings that Sierra filed the instant action.
<u>See</u> Weithman Decl. ¶¶ 8, 10.

2067 (requiring proper light and ventilation of sanitary facilities
and, in SRO buildings, requiring one such facility per six
residents).  The City defendants, for their part, dispute that these
other regulations adequately address the problems section 27-2076(b)
is aimed at alleviating.

It is clear to the Court that the City enacted section 27-
2076(b) in 1960 with the sound and commendable goal of protecting the
safety of children.  In light of the intervening passage of the FHA
and amendments, however, and the fact that section 27-2076(b) is
facially discriminatory under that statute, the City defendants must
justify the continued operation of the statute today.  Unless the
City defendants can show that section 27-2076(b) "further[s], in
theory and in practice, a legitimate, bona fide governmental interest
and that no alternative would serve that interest with less
discriminatory effect," Huntington Branch, 844 F.2d at 936, the
provision cannot be sustained.

As the above discussion illustrates, however, the statute's
present effect is the subject of genuine and material factual
disputes between the parties.  Accordingly, both sides' summary
judgment motions must be, and hereby are, denied.

To resolve the disputed issues of fact, the Court will permit
each party to conduct limited discovery, following which the Court
will hold an evidentiary hearing on plaintiff's request for a
permanent injunction (obviating, as no longer necessary, any hearing
on a preliminary injunction).  At this hearing, the Court will find
it helpful to have the parties present evidence pertaining to, among

other matters: all violations of HMC section 27-2076(b) issued over the past ten years; who reported those violations to the City, if known; whether those violations were preceded or followed by eviction proceedings; the living conditions of families evicted from or precluded from living in SROs; and the enforcement of other housing occupancy and safety standards.  To set a schedule for discovery and a date for the hearing, counsel are directed to jointly call the Court by no later than May 16, 2008, at 12 noon.  Finally, the Court is aware that plaintiff's complaint also requested "damages as would fully compensate Plaintiff Sierra for damages caused by the Defendants' unlawful discriminatory practices."  Complaint for Preliminary and Permanent Injunction; Declaratory Judgment; and Damages for Violation of the Fair Housing Act and the New York State Human Rights Law at 11.  Should plaintiff prevail on her request for a permanent injunction, the Court will at that time take up the issue of whether a jury trial is necessary to determine what damages, if any, are owed to Sierra.

SO ORDERED.

Dated: New York, NY
May 13, 2008

_____
JED S. RAKOFF, U.S.D.J.

12