UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

JUANA SIERRA,                                    07 Civ. _6769_ (JSR)

*Plaintiff,*

- against -

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER, in her capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF BUILDINGS; NEW
YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, and
SHAUN DONOVAN, in his capacity as
COMMISSIONER OF NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT; and EMAD IBRAHEM.

*Defendants.*

-------------------------------------------------------------------- X

## PLAINTIFF'S POST-TRIAL MEMORANDUM OF LAW

THE URBAN JUSTICE CENTER
Homelessness Outreach and Prevention
Project
Leslie T. Annexstein (LA 0430)
Tara S. Crean (TC 5207)
123 William Street, 16th Floor
New York, New York 10038
Tel. (646) 602-5643

WEST SIDE SRO LAW PROJECT
Goddard Riverside Comm. Center
Martha Weithman (MW 3333)
647 Columbus Avenue
New York, New York 10025
Tel. (212) 799-9638

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT …………………………………………………….. 1

ARGUMENT ………………………………………………………………………. 3

CONCLUSION ……………………………………………………………………....13

TABLE OF AUTHORITIES

Cases

*Allen v. Wright*, 468 U.S. 737 (1984)...................................................................1

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987) ....................................................13

*Brown v. Trustees of Boston Univ.*, 891 F.2d 337 (1st Cir. 1989) ...............................13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................2

*City of Rome v. Verizon Communications*, 362 F.3d 168 (2d Cir. 2004) ........................11

*Cmty. House, Inc. v. City of Boise*, 490 F.3d (9th Cir. 2007) ........................................10

*Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir. 1992) .........................2, 11

*Dimension Fin. Corp. v. Board of Governors of the Fed. Reserve Sys.*, 744 F.2d 1402 (10th Cir. 1984) ............................................................................................................13

*Dothard v. Rawlinson*, 433 U.S. 321, 335 (1977) ....................................................10

*Evans v. Harnett Cty. Bd. of Educ.*, 684 F.2d 304, 306 (4th Cir. 1982) ..........................13

*Fair Hous. in Huntington Cmty. v. Town of Huntington*, 316 F.3d 357 (2d Cir. 2003) .........1

*Friends of the Earth, Inc. v. Laidlaw Env'tal Servs., Inc.*, 528 U.S. 167 (2000) ................8

*Frontiero v. Richardson*, 411 U.S. 677 (1973) ......................................................10

*Gladstone, Realtors v. Bellwood*, 441 U.S. 91 (1979) ...............................................1, 7

*Green v. Mansour*, 474 U.S. 64 (1985) ...............................................................11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ...............................................6, 7, 8

*Huntington Branch, NAACP v. Huntington*, 844 F.2d 926 (2d Cir. 1988) ........................2

*International Union, UAW v. Johnson Controls*, 499 U.S. 187 (1991) .........................5, 8, 10

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ........................................11

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995) ........................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................2

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ..........................8

*Munroe v. 344 West 76th Realty Corp.*, 448 N.Y.S. 2d 388 (N.Y. Sup. Ct. 1982) .............12

*Planned Parenthood Fed'n of Amer., Inc. v. Heckler*, 712 F.2d 650 (D.C. Cir. 1983) ........13

*Professional Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258 (5th Cir. 1984) ...................................................................................................13

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) .................................................4

*Roe v. Wade*, 219 U.S. 130 (1973) .................................................................8

*S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911) .................................................8

*Service Employees Int'l Union v. General Servs. Admin.*, 830 F. Supp. 5 (D.D.C. 1993) ....13

*Sierra v. City of New York*, No. 07 Civ. 6769, slip op. (Mar. 3, 2008) ..........................1

*Sierra v. City of New York*, No. 07 Civ. 6769, slip op. (S.D.N.Y. May 13, 2008) .............1

*Stanton v. Stanton*, 421 U.S. 7 (1975) ................................................................10

*Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ....................................................11

*Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1975) ..................................8

*United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984) ............................................4

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) .....................................................................................1

*Warth v. Seldin*, 422 U.S. 490, 498 (1975) ........................................................1

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) ..................................................10

<u>Statutes</u>

N.Y.C. Admin. Code § 27-2076(b) .............................................................*Passim*

42 U.S.C. 3604(a) .........................................................................................7

42 U.S.C. §3604(b) ......................................................................................7

## PRELIMINARY STATEMENT

Plaintiff Juana Sierra ("Plaintiff" or "Sierra") should prevail in her challenge to §27-2076(b) ("Section 27-2076(b)" or "the discriminatory provision") of the New York City Housing Maintenance Code, which this Court has already determined discriminates on its face against families in violation of the federal Fair Housing Act. *Sierra v. City of New York*, No. 07 Civ. 6769, slip op. at 3 (S.D.N.Y. May 13, 2008). ("Summ. J. Op.") As a threshold matter, Plaintiff still meets the requirements of Article III standing: (1) she has been injured and remains at risk of imminent harm; (2) this injury is directly attributable to Defendants' hand delivery to landlords of a tool of discrimination; and (3) the harm caused by City Defendants can be redressed by a favorable decision on the merits and an award declaratory relief, at the very least. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

This Court has already ruled on a Motion to Dismiss based on, *inter alia,* Defendants' allegations that Plaintiff's surrender of her rooming units stripped her of standing and rendered the instant action moot. The Court concluded that, "Sierra has made a showing of ongoing injury sufficient to establish standing to seek injunctive relief, even apart from the harm she has already suffered that gives her standing to seek damages." *Sierra v. City of New York*, No. 07 Civ. 6769, slip op. at 8 (Mar. 3, 2008) (citations omitted) ("Mot. Dismiss Op.").[1]  Sierra's housing crisis has not yet resolved so as to put her, with certainty, into a safe harbor from the exclusionary effect of Section 27-

---

[1] Plaintiff does not challenge this Court's authority to revisit Article III standing at any point. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 115 & n.31 (1979); *Fair Hous. in Huntington Cmty. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003).

2706(b). She continues to live without a home (Tr. 34:18-35:16), having lost her two-bedroom home with a rent stabilized at an affordable $522 per month. (Tr. 41:13-19) Thus she continues to live with the present adverse effects of Section 27-2076(b)'s historical deployment against her. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983). The injury to Sierra's family is marked by a high degree of immediacy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

As to the substance of the challenge at issue, Defendants have failed to carry their burden of establishing sufficient facts to justify their discrimination against families. This Court has already adopted the "heightened scrutiny" set forth in *Huntington Branch, NAACP v. Huntington*, 844 F.2d 926, 936 (2d Cir. 1988): "the defendant must prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." (quoted in Summ. J. Op. at 5-6) Rather than proffering facts to support their assertion that children should not live in rooming units, Defendants have simply repeated that conclusion in the most general terms and amplified it with exclamation points. Defendants have not even considered legitimate non-discriminatory alternatives. (Tr. 168:19-169:21) At the very least, the record is devoid of any proof of such consideration; hence, Defendants have unquestionably failed to make out the second prong of the defense required by *Huntington*. Accordingly, Defendants' liability cannot be foresworn.

Ordinarily, declaratory relief should follow the liability finding. *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992). Plaintiff prays that this Court exercise its discretion to grant permanent injunctive relief because she has satisfied well-established principles of equity: (1) she has suffered irreparable harm, having

surrendered her rent-stabilized home where her family lived in compliance with

maximum occupancy requirements (Tr. 41:9-25, 36:25-37:14), relocated into

overcrowded conditions (Tr. 34:17-35:15); Multiple Dwelling Law, N.Y. Mult. Dwell.

Law § 248(12), and subjected her children to multiple moves in less than a year (Tr.

34:17-36:19) (2) monetary damages are unable to compensate for that injury, where the

emotional distress attendant to being the victim of unlawful discrimination is

immeasurable.

## ARGUMENT

### I.    SIERRA STILL HAS STANDING

Sierra should not be held to a higher bar than the Supreme Court has already

erected for assessing facial discrimination challenges in general or standing under the

Fair Housing Act in particular.  Illuminated against the backdrop of a hoary line of civil

rights jurisprudence, what Sierra has suffered is enough for this Court to consider the

challenge, and not one more family should have to suffer eviction or exclusion before this

tool of discrimination is finally put to rest.

The record admits of no doubt as to whether Sierra was, at the time the

Complaint was filed, a covered party subject to the discriminatory provision.  The only

witness with authority to speak with the authority to bind a Defendant agency[2] conceded

---

[2] Plaintiff refers to Mario Ferrigno, Assistant Commissioner for Code Enforcement for
Defendant New York City Department of Housing Preservation and Development.
Although his authority to speak for Defendants is uncontroverted, Plaintiff attaches
correspondence from defense counsel as proof of Ferrigno's authority.  Statements by

that the rooms in which Sierra and her two children lived when the Complaint was filed

were properly classified as rooming units (Tr. 137:9-22), because they lacked an in-unit

kitchen. With her motion for a preliminary injunction pending, Plaintiff was subjected to

eviction proceedings in which the discriminatory provision was invoked as one basis on

which her family's removal was sought. There can be no reasonable doubt that the threat

of eviction was palpable: Section 27-2076(b) prohibits children between the ages of 12

months and 16 years from living in a rooming unit; Plaintiff's home was classified as two

rooming units (Tr. 137:9-22); Ex. 5, and she lived there with two children within the

covered age range. (Tr. 35:6, 37:4-6)

Because of that credible threat of eviction, Plaintiff and her family vacated the

rooming units. Since then and to this day, they live doubled up and overcrowded (Tr.

34:17-36:15), seeking an apartment of their own within their meager means (Tr. 41:24-

25, 42:24-43:6) This Court has already held that that move did not strip Sierra of

standing. Ambiguity arises only because of the following testimony on page 42:

> "Q. As you sit here today, would you consider sharing a
> bathroom with strangers?
> "A. Family, families, for family.
> "Q. The question was, would you consider sharing your bathroom
> with someone other than family?
> "A. No.
> "Q. Would you consider sharing your kitchen with people other
> than family?
> "A. No."

Respectfully, Plaintiff submits that the facts simply are not in yet. It is uncontested that

the ultimate question of where Plaintiff will find a home has not been answered, nor can

---

counsel are admissible against a party and bind that party. *Purgess v. Sharrock*, 33 F.3d
134 (2d Cir. 1994); *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984).

anyone assert with certainty from where she will be turned away.[3]  It is normal that

Sierra, like most other individuals – rich or poor, with children and without – would

prefer her own bathroom and kitchen, and would seek that as an optimal condition.  Yet

almost a year later she still has not found anything with those accoutrements in her price

range.  (Tr. 42:24-43:6)

Sierra's injuries are at least as tangible and enduring than those of prevailing

parties in similar challenges to facially discriminatory policies.  In *UAW v. Johnson

Controls*, 499 U.S. 187 (1991), the Supreme Court upheld a challenge to a policy that

excluded women of reproductive age from jobs making batteries.  *Johnson Controls* was

a class action, where the requirements of numerosity, commonality, typicality, and

adequacy of representation are more stringent in accordance with F. R. Civ. P. 23(a).

According to the Supreme Court's recitation of their injuries, plaintiff Craig had

undergone sterilization in order not to lose her job; plaintiff Nason had been transferred

to another position involving lesser compensation (and lesser less exposure); and plaintiff

Penney (male) had been denied a leave of absence he had sought to lower his lead level

prior to trying to conceive.  As Defendants did in the instant case in their motion to

dismiss, one could assert that the harm to Plaintiff was over once she surrendered her

rent-stabilized apartment (Tr. 41:9-25; Exs. 10-11 ¶9) rather than be evicted pursuant to

the discriminatory provision (Exs. 10-11); however, like Craig, Sierra lives every day

with the ongoing pain of housing instability.  (Tr. 34:17-36:19)  To establish standing,

Craig was not forced to assert that she would have borne a child but for Johnson

Controls' policy; the fact that it took away that option sufficed.  Similarly, Nason's

---

[3] Because liability and damages were bifurcated, Sierra did not testify in detail at the

5

purported benefit of lower lead levels (indisputably, like a private bath and kitchen, beneficial) could not, as a matter of law, be assumed to substitute for her lost compensation, because the violation of Title VII was that Johnson Controls' policy took that choice (between risk and money) away from her.[4]  Finally, Penney was not required to show that his lead levels caused any birth defect – the Supreme Court's concern began and ended with the fact that he was subjected to an explicitly sex-based classification. "The bias in Johnson Controls' policy is obvious. Fertile men, but not fertile women, are given a choice as to whether they wish to risk their reproductive health for a particular job." *Johnson Controls*, 499 U.S. at 197.  Likewise here, the bias in Defendants' policy is obvious:  on its face it classifies tenants by whether or not they live with children between the ages of one and sixteen.  Single adults, but not families with children, are given a choice as to whether or not they wish to trade off private bathrooms and kitchens for the money saved by a lower rent.  As someone put to that illegal choice, Sierra has established injury in fact.

Similarly, the Supreme Court has recognized that testers have standing under the Fair Housing Act even where they have no intention of buying or renting the home from which they are steered on the basis of race.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  The Fair Housing Act creates a legally cognizable right not to have access to housing circumscribed on membership in a protected class.  Fair Housing Act, 42 U.S.C. 3604(a) (making it unlawful "to refuse to sell or rent .. or otherwise make unavailable or

---

liability hearing about her difficulties in finding alternate housing.

[4] Plaintiff's expert, Dr. Lance Freeman, has provided unrebutted evidence that families living in higher cost housing (in this case, more expensive than rooming units) have to make trade-offs that could a parent exercising reasonable judgment could deem more

deny, a dwelling to any person because of ... familial status"); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) ("The phrase 'otherwise make unavailable has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions."). Sierra's access remains barred by the discriminatory zoning provision. Thus, even if this Court construes her testimony as foreclosing any possibility that she will rent a pair of rooming units again in the future, Sierra still suffers the very injury the Fair Housing Act was passed to prevent.

When the Supreme Court held that the *Havens* testers had standing, the Supreme Court found that Congress intended the Fair Housing Act to "extend to the full limits of Article III" and hence to require a minimum of injury in fact as a result of defendant's actions. *Havens*, 455 U.S. at 372 (citing *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9, 109 (1979)). The "actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing." *Havens*, 455 U.S. at 373. Here, Plaintiff relies on Subsections 804(a) and (b), which, respectively, declare it unlawful to "make unavailable or deny, a dwelling to any person because of . . . familial status" and to "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of . . . familial status[.]" 42 U.S.C. § §3604(a)-(b). The Fair Housing Act guards against restrictions on the pool of housing opportunities based on familial status. Section 27-2076(b) circumscribes Sierra's choices in precisely the way, and for precisely the reasons, at which Congress took aim in adding familial status as a protected classification. The House Report stated: "In many parts of the country families with children are refused

deleterious to children, such as a less safe neighborhood or a missed medical treatment.

housing despite their ability to pay for it." Fair Housing Amendments Act of 1988 House

Report, H.R. Rep. No. 100-711, at 19 (1988), *as reprinted in* 1988 U.S.S.C.A.N. 2173.

Because Congress recognized the injury in fact that arises when restrictions such as

Section 27-2076(b) exclude families with children from the housing of their choice and

within their means, Sierra has standing. Her injury is not distinguishable from injuries

the Supreme Court found sufficient in *Johnson Controls* and *Havens*.

## II.    PLAINTIFF'S CASE IS NOT MOOT

A justiciable controversy, warranting declaratory relief, abides when "the

challenged governmental activity . . . has not evaporated or disappeared, and, by its

continuing and brooding presence cases what·may well be a substantial adverse effect on

the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115,

122 (1975) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941). In *Super Tire*, the labor dispute had been resolved, but the underlying issue still

remained unsettled. Here, City defendants have not demonstrated that the facially

discriminatory provision will no longer be enforced.

Even if Sierra's situation is construed as removing her from the world of rooming

units going forward, the instant action is not moot because it is "capable of repetition yet

evading review." *Friends of the Earth, Inc. v. Laidlaw Env'tal Servs., Inc.*, 528 U.S. 167

(2000); *Roe v. Wade*, 219 U.S. 130 (1973); *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498,

515 (1911).

(Ex. 2, 16-17)

### III.    DEFENDANTS HAVE NOT CARRIED THEIR BURDEN

This Court has already held that Defendants needed to prove that the City Council's rationale for banning families with children, but not adults without children, was supported in practice, by facts on the ground.  (Summ. J. Op. 5-6)  This Court has warned that those facts demand "heightened scrutiny."  However, Defendants have come forward with explanations that, at best, purport to establish that the statutory distinction survives under "common sense."  Defendants have not come forward with any reason why adults, children over the age of sixteen, or children under the age of twelve months, are not also affected by the concerns this Court identified as unique to rooming units: cleanliness, privacy, hygiene, nutrition, and safety.

Nor have Defendants succeeded in showing that rooming units are a class unto themselves with regard to any of those qualities.  Defendants freely admit that the generalizations they invoke have exceptions.  (Tr. 202:9-203:15, 204:9-13, 205:12-25)  Plaintiff's witnesses' testimony further preclude a factual finding that those dangers exist uniquely in rooming units.  Dr. Freeman's analysis of the Census Bureau data shows that kitchens that are not completely functional and broken toilets are at least as likely to be found in comparably priced regular (non-rooming unit) apartments.  (Ex. 2, 11, 13-14)  Susan Cohen's testimony indicates that in her recent observation shared bathrooms and kitchens are neither dirtier no more malfunctioning than private bathrooms and kitchens in comparably priced rental units.  (83:6-84:12)  Even if the Court were to find Defendants' witnesses credible and Plaintiff's witnesses not, Defendants' admissions are

fatal to their case under the heightened scrutiny standard imported from both constitutional and Title VII jurisprudence.

Under the Supreme Court's heightened scrutiny analysis in the constitutional context, "a vast majority" (Tr,. 205:12-25, 208:18-209:3) cannot justify a distinction on a proscribed basis, in this case, a basis forbidden by Congress. Thus, for example, in *Frontiero v. Richardson*, 411 U.S. 677 (1973), the Court did not argue with the government's assertion that empirically wives were usually dependent on their husbands for at least half of their financial support, but found that the mere recitation of that fact did not justify the leap to a statutory scheme that drew a sharp line between the sexes. Similar "archaic and overbroad [generalizations]" were struck down in *Weinberger v. Wiesenfeld,* 420 U.S. 636 (1975), and *Stanton v. Stanton*, 421 U.S. 7 (1975). Importantly, those facially discriminatory statutes were struck down even though they were justified, as Section 27-2076(b) is, as benefiting the protected class. A single exception likewise defeats a bona fide occupational qualification in the employment context. *UAW v. Johnson Controls*, 499 U.S. 187, 201 (1991); *Dothard v. Rawlinson*, 433 U.S. 321, 335 (1977).

Tellingly, portions of the defense offered here echo the reasons cited by the Supreme Court in striking down facially discriminatory laws. They are based on sterotypes that, in Dr. Hart's words, "the people in these buildings" do not eat well, clean up, or respect their neighbors' privacy. Not only is this contradicted by Ms. Cohen's testimony, but it relies on the most virulent stereotypes of the poorest of the poor. Defendants' burden here was to demonstrate that their rationale was not based on stereotypes. *Cmty. House, Inc. v. City of Boise,* 490 F.3d 1041, 1050 (9th Cir. 2007).

Instead, they have regurgitated stereotypes in the hopes that by repetition and connection

with a purported expert, a stereotype could be rechristened common sense and

transmogrified into fact. As the Supreme Court wrote in *Kumho Tire Co., Ltd. v.*

*Carmichael,* 526 U.S. 137 (199), "nothing in either Daubert or the FRE requires a

district court to admit opinion evidence that is connected to existing data only to be the

*ipse dixit* of the expert." *A fortiori, ipse dixit* assertions cannot be accorded sufficient

weight to justify facial discrimination.

## IV.    DECLARATORY RELIEF FOLLOWS LOGICALLY FROM THE SUPREMACY CLAUSE VIOLATION

Declaratory relief may be granted in the absence of injunctive relief. *Green v.*

*Mansour*, 474 U.S. 64, 72 (1985); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). The

Second Circuit has noted that one purpose of declaratory relief is "to furnish a less

formidable alternative to injunctive relief. *City of Rome v. Verizon Communications*, 362

F.3d 168 (2d Cir. 2004), because non-compliance with a declaratory judgment, while

inappropriate, does not subject the party to contempt.

The two criteria guiding the policy in favor of rendering declaratory judgments

are (1) whether the judgment will serve a useful purpose in clarifying and settling legal

relations in issue, and (2) whether it will terminate and afford relief from the uncertainty,

insecurity and controversy giving rise to the proceeding. *Continental Cas. Co. v. Coastal*

*Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992). While the Declaratory Judgment Act is an

enabling act, and as such vests courts with discretion and does not create a right for a

litigant, *Mansour*, 474 U.S. at 72, the Second Circuit has indicated that if *either* prong of

the *Continental Casualty* test is met, the request for declaratory judgment "should" be

entertained. *Continental Cas.*, 977 F.2d at 737. The zeal with which the City has

defended and enforced this provision since this Court's declaration that it discriminates against families on its face (Ex. 7) indicates that the law, at least in the minds of the relevant actors, is unsettled. Moreover, when Sierra filed the instant action, it was because of the "insecurity" as to whether she could be evicted on the basis of a provision of local law that conflicts with federal law. Because this sword of Damocles is what the 15% of rooming unit residents living with children between the ages of one and sixteen (Ex. A, 8) face, and because a finding by any city agency that their residence is in violation of Section 27-2076(b) is grounds for eviction, RSC 2524.3(c); *Munroe v. 344 East 76th Realty Corp.*, 448 N.Y.S. 2d 388, 390 (N.Y. Sup. Ct. 1982), this Court's extension of its equitable power is warranted.

## V.    INJUNCTIVE RELIEF NOT LIMITED TO PLAINTIFF IS MERITED

"A plaintiff asking an injunction because of the defendant's violation of a statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable injury" means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired. At least that is enough where, as here, the only consequence of an injunction is that the defendant must effect a compliance with the statute which he ought to have done before."

There is no basis in law for restricting an injunction to Plaintiff. Indeed, the test for determining the lawfulness of the statute requires this Court to balance not just Sierra's interest in redress from past discrimination and access to housing opportunities without restriction based on her familial status but the public interest as a whole. When courts hold a statutory provision to be invalid, they frequently enjoin the provision's enforcement across the board. In the words of the D.C. Circuit, "When a reviewing court

determines that agency regulations are unlawful, the ordinary result is that the rules are

vacated -- not that their application to the individual petitioners is proscribed." *Planned*

*Parenthood Fed'n of Am. v. Heckler,* 712 F.2d 650 (D.C. Cir. 1983) (affirming final

injunction prohibiting enforcement of invalidated regulations); *accord Dimension Fin.*

*Corp. v. Bd. of Governors of Fed. Reserve Sys.,* 744 F.2d 1402 (10th Cir. 1984)

(enjoining Board from enforcing or implementing invalidated regulations); *SEIU v. Gen.*

*Servs. Admin.,* 830 F. Supp. 5 (D.D.C. 1993) (invalidating regulation and enjoining

further enforcement of rule).  Crucially, courts may consider benefits to non-parties in

entering injunctions that also deliver to the prevailing party the relief to which she is

entitled.  *Brown v. Trustees of Boston Univ.,* 891 F.2d 337 (1st Cir. 1989); *Bresgal v.*

*Brock,* 843 F.2d 1163, 1170-71 (9th Cir. 1987); *Prof'l Ass'n of Coll. Educators v. El Paso*

*Cty. Cmty. Coll. Dist.,* 730 F.2d 258, 274 (5th Cir. 1984); *Evans v. Harnett Cty. Bd. of*

*Educ.,* 684 F.2d 304, 306 (4th Cir. 1982).

      Injury to non-parties is particularly relevant in this facial challenge to

discrimination that, absent this Court's exercise of its injunctive power, will evade review

and be repeated to the detriment of more families with children.  Only declaratory and

injunctive relief can prevent Lam from reappearing before this Court with yet another

dispossession.

## CONCLUSION

      For the foregoing reasons, and based on the evidence developed at trial,

Defendants' facially discriminatory provision should be recognized as irreconcilable with

the Fair Housing Act, declared superseded by federal law, and its enforcement enjoined.

13

Respectfully submitted,

Tara S. Crean (TC 5207)

URBAN JUSTICE CENTER
Leslie T. Annexstein (LA 0430)
Tara S. Crean (TC 5207)
123 William Street, 16th Floor
New York, New York 10038
Tel. (646) 602-5643

WEST SIDE SRO LAW PROJECT
Martha Weithman (MW 3333)
647 Columbus Avenue
New York, NY 10025
Tel. (212) 799-9638



**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE **C**ITY OF **N**EW **Y**ORK
**LAW DEPARTMENT**
100 CHURCH STREET, Room 5-189
NEW YORK, NY 10007

**JERALD HOROWITZ**
Senior Counsel

Tel: (212) 442-0589
Fax:(212) 791-9714
email: jhorowit@law.nyc.gov

August 6, 2008

**BY E-MAIL**
Tara Crean
Leslie T. Annexstein
Urban Justice Center
123 William Street, 16th Floor
New York, New York 10038

Molly Doherty
Martha Weithman
West Side SRO Law Project
Goddard Riverside Comm. Center
647 Columbus Avenue
New York, New York 10025

Re:  Sierra v. City of New York, et al.,
07 Civ. 6769 (JSR)

Dear Counsel:

This letter is written to address remaining discovery issues in the action, based on the proceedings held on July 29, 2008, and the parties' meet and confer yesterday.

**A.     Rule 30(b)(6) Deposition**

The Court directed that the defendants produce a witness for a Rule 30(b)(6) deposition to testify about, as the Court described, "the enforcement of other housing occupancy and safety standards, in the sense that the Court is interested in it, which is primarily whether there's a difference between what gives rise to a 27-2076(b) type of violation versus other kinds of violations. That's the assertion, in effect, being made by the plaintiffs here that the City does not really enforce this regulation the way it enforces other regulations. It lets families live in SROs until and unless a landlord complains, because he wants the people out for his own reasons, and then the City follows through." (Tr. 7/29/08 at 7-8). The Court also described the topic to be "whether the origin of violations of other safety housing violations is discernably

different from these kinds of violations?" (Tr. 7/29/08 at 9/7-11). The Court did not order any other topic for deposition.

Accordingly, based upon the direction of the Court, defendants designate Mario Ferrigno to provide testimony on the topic ordered by the Court, as discussed above. Mr. Ferrigno is confirmed for August 15, 2008, one of the dates offered by plaintiff, to be deposed on both individual and Rule 30(b)(6) matters to be completed that day. Given the limited scope of discovery, and the many urgent responsibilities of Assistant Commissioner Ferrigno as the head of Code Enforcement, his deposition should be limited to a few hours, but in any event, no more than one day.

Assistant Commissioner Ferrigno speaks for the agency on code enforcement matters. Therefore, there is no need to call Associate Commissioner Mustaciuolo for a deposition. As we discussed, Associate Commissioner Mustaciuolo's knowledge of code enforcement matters is not different from that of Assistant Commissioner Ferrigno; the depositions would be unnecessary duplicative. Please confirm.

**B.    Meeting To Educate Plaintiff's Counsel**

The Court directed the defendants to "educate plaintiff's counsel how to use the information they have received so they can figure out who the exact - - the names of the complainants, not just their numbers or their categorization." (Tr. 7/29/08 at 21/2-9). In this regard, the parties agreed to meet informally where the computer file(s) could be displayed on a screen, and plaintiff counsel's concerns about complainant data can be addressed. The meeting is confirmed for Monday, August 11, 2008 at 4:00 P.M., again one of the dates proposed by plaintiff, at HPD's offices located at 100 Gold Street. Counsel should call ext. 8686 from a telephone located in the reception area of the lobby of 100 Gold Street, and will be directed to Room 5R1 on the fifth floor.

**C.    Expert Reports and Depositions**

This is to confirm that the parties agreed to reschedule expert reports to be exchanged by no later than August 8, 2008, and rebuttal reports to be exchanged no later than August 20, 2008.

Defendants confirm the depositions of Dr. Roger Hart, and Dr. Moon Wha Lee for August 19, 2008 and August 26, 2008, respectfully. I note that the parties agreed to extend the close of discovery until August 26, 2008, for this purpose.

Plaintiff confirmed the deposition of Dr. Freeman for August 21, 2008.

**D.     Other Depositions**

       This is to re-confirm the depositions of inspectors O'Connell and Cyrus for August 8 and 12, respectively.  We are awaiting confirmation of Ricky Lam's deposition for August 13 or 14.

                                 Sincerely,

                                 /s/

                                 Jerald Horowitz (JH8395)
                                 Assistant Corporation Counsel